Ryan G. Baker (Bar No. 214036)
  rbaker@waymakerlaw.com
Scott M. Malzahn (Bar No. 229204)
  smalzahn@waymakerlaw.com
Brian T. Grace (Bar No. 307826)
  bgrace@waymakerlaw.com
Emily R. Stierwalt (Bar No. 323927)
  estierwalt@waymakerlaw.com
WAYMAKER LLP
777 S. Figueroa St., Suite 2850
Los Angeles, California 90017
Telephone: (424) 652-7800
Facsimile: (424) 652-7850

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| INTERNATIONAL MEDICAL DEVICES, INC., et al.,<br><br>      Plaintiffs,<br><br>   v.<br><br>ROBERT CORNELL, MD, et al.,<br><br>      Defendants. | Case No. 2:20-cv-03503-CBM (RAOx)<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION**<br><br>Judge: Hon. Consuelo B. Marshall<br><br>Date: October 12, 2021<br>Time: 10:00 a.m.<br>Courtroom: 8B<br><br>[Filed concurrently with Separate Statement of Undisputed Material Facts; Declarations of Dr. James Elist, Jonathan Elist, Emily R. Stierwalt and John M.; and [Proposed] Order] |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on October 12 2021, at 10:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Consuelo B. Marshall, at the United States District Court for the Central District of California, First Street Courthouse, 350 W. 1st Street, Courtroom #8b, Los Angeles, California 90012, Plaintiffs International Medical Devices, Inc. ("IMD"), Menova International, Inc. ("Menova") and James Elist, MD (collectively, "Plaintiffs"), shall move and hereby do move the Court for an Order granting summary adjudication pursuant to Rule 56(a) of the Federal Rules of Civil Procedure in Plaintiffs' favor and against Defendants Robert J. Cornell, MD ("Cornell"); Robert J. Cornell M.D., P.A. ("Cornell PA"); Jonathan Clavell Hernandez, MD ("Clavell"); Clavell Urology, PLLC ("Clavell Urology"); David Louis Nichols ("Nichols"); Hans Mische ("Mische"); Run Wang, MD ("Wang") (collectively, "Defendants"),[1] on the grounds that, based on the undisputed material facts adduced in this action, Plaintiffs are entitled to judgment in their favor as a matter of law as follows:

- Summary adjudication is proper on Plaintiffs' fifth cause of action against defendants Cornell, Cornell PA, Clavell, and Clavell Urology, all of whom advertised their services using the registered "Penuma" mark owned by Plaintiff Menova. Plaintiffs are entitled to damages and injunctive relief on this claim.

- Summary adjudication is proper on Plaintiffs' sixth cause of action against defendants Cornell, Cornell PA, Clavell, and Clavell Urology, all of whom advertised their services using a spurious and counterfeit "Penuma" mark. Plaintiffs are entitled to damages and injunctive relief on this claim.

---

[1] Additional defendants are named in this action; however, Plaintiffs do not seek summary adjudication as to any of them.

- Summary adjudication is proper on Plaintiffs' seventh cause of action against defendants Cornell, Mische, and Nichols, because they infringed on a copyright held by Dr. Elist. Plaintiffs are entitled to damages and injunctive relief on this claim.
- Summary adjudication on liability is proper on Plaintiff IMD's eighth cause of action for breach of contract against defendant Cornell. Specifically, this Court should hold defendant Cornell is liable for breaching the Non-Disclosure Agreement he entered with IMD.
- Summary adjudication on liability is proper on Plaintiff IMD's ninth cause of action against defendant Wang. Specifically, this Court should hold defendant Wang is liable for breaching the "Consulting Services Agreement" he entered with IMD.
- Summary adjudication is proper on Plaintiffs' tenth cause of action against Cornell. Defendant Cornell is liable for a breach of the covenant of good faith and fair dealing. Cornell unfairly interfered with IMD's rights to receive the benefits of the contract with Cornell when he created a competing cosmetic penile implant.
- Summary adjudication is proper on Plaintiffs' tenth cause of action against Wang. Wang is liable for a breach of the covenant of good faith and fair dealing through his actions working for a competing implant company and advising that company based on his knowledge of Penuma, while contractually engaged by IMD on the Penuma advisory board.

This Motion is made following the conference of counsel which took place on August 11, 2021. (Declaration of Emily R. Stierwalt in Support of Plaintiffs' Motion for Summary Adjudication ("ERS Decl."), ¶ 39.) This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the supporting

declarations of Dr. James Elist, Jonathan Elist, Emily R. Stierwalt, and John M., all the pleadings, files, and records in this proceeding, all other matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or considered by the Court before its ruling.

Dated: September 14, 2021          WAYMAKER LLP

By:  */s/ Ryan G. Baker*
     Ryan G. Baker
     *Attorneys for Plaintiffs*
     *INTERNATIONAL MEDICAL DEVICES,*
     *INC., MENOVA INTERNATIONAL, INC.,*
     *and JAMES ELIST, M.D.*

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION

## **<u>TABLE OF CONTENTS</u>**

Page

I.  **INTRODUCTION** ........................................................................................ 1

II. **FACTUAL BACKGROUND** ..................................................................... 3

    A.    **Dr. Elist Creates Penuma, the First and Only FDA-Cleared Cosmetic Penile Implant.** ........................................................... 3

    B.    **Plaintiffs Work with a Select Group of Consultants and Advisors to Improve Penuma and Create a Penuma Training Program.** ......................................................................................... 4

    C.    **Defendant Cornell Signs the Penuma NDA, Learns Plaintiffs' Confidential Information, then Shares it Without Consent.** ........... 6

    D.    **Defendants Cornell and Clavell Infringe the Penuma Trademark** ....................................................................................... 7

    E.    **Wang Advises Augmenta Breaching His Agreement with IMD.** ................................................................................................ 9

III. **LEGAL STANDARD** ............................................................................ 10

IV. **ARGUMENT** ........................................................................................... 11

    A.    **This Court Should Grant Summary Adjudication on Plaintiffs' Fifth Cause of Action for Trademark Infringement** ........................................................................... 11

        1.    **Penuma is a Registered Trademark** ....................................... 11

        2.    **Cornell and Clavell Used the Penuma Mark to Offer Cosmetic Penile Implants** ............................................... 11

        3.    **Cornell and Clavell's Use of the Penuma Mark in Their Urology Medical Practices Caused Confusion** ........... 12

               (a)    **The Penuma mark is fanciful, arbitrary, and warrants the maximum protection under the law** ...... 13

               (b)    **Cornell and Clavell Advertised Cosmetic Penile Implants under the Penuma Mark that Are in Close Proximity.** ........................................................ 13

               (c)    **Cornell and Clavell Used the Exact Same Mark as Plaintiffs.** ............................................................. 14

               (d)    **There Is Evidence of Actual Consumer Confusion.** ................................................................... 14

(e)     The Parties Use Similar Marketing Channels ............. 15

(f)      Reasonably Prudent Customers Cannot be Expected to Distinguish Between Two Product Lines When an Identical Mark Is Used ...................... 15

(g)     Defendants Willfully Adopted Plaintiffs' Mark. ......... 16

(h)     Defendants Intended to Expand into Plaintiffs' Product Line. ........................................................ 17

B.    This Court Should Grant Summary Adjudication on Plaintiffs' Sixth Cause of Action for Use of a Counterfeit Mark Against Cornell, Clavell and their Medical Practices ........... 18

C.    Cornell, Mische and Nichols Infringed Plaintiffs' Copyright ........ 20

D.    Cornell Breached Express and Implied Contract Terms ............... 21

    1.    Cornell Breached the Penuma NDA ....................................... 22

    2.    Cornell Breached the Implied Covenant of Good Faith ....... 23

E.    Wang Breached His Consulting Agreement With IMD ................. 24

    1.    Wang Breached the Consulting Agreement's Express Terms ................................................................................ 24

    2.    Wang Breached the Implied Covenant ................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AMF Inc. v. Sleekcraft Boats*,
  599 F.2d 341 (9th Cir. 1979) ...........................................................................*passim*

*Arcona, Inc. v. Farmacy Beauty, LLC*,
  976 F.3d 1074 (9th Cir. 2020) ................................................................. 18

*Bauer Brothers, LLC v. Nike, Inc.*,
  159 F. Supp. 3d 1164 (S.D. Cal. 2016) ................................................... 18

*BlueGEM Security, Inc. v. Trend Micro Inc.*,
  No. CV09-1492 ODW, 2010 WL 11505702
  (C.D. Cal. June 8, 2010) ......................................................................... 21

*Brookfield Communications, Inc. v. West Coast Entertainment Corp.*,
  174 F.3d 1036 (9th Cir. 1999) ........................................................... 11, 12

*Carson v. Mercury Insurance Co.*,
  210 Cal. App. 4th 409 (2012) ................................................................. 23

*Deckers Outdoor Corp. v. Ozwear Connection Pty Ltd.*,
  No. CV-14-2307 RSWL (FFMx), 2014 WL 4679001
  (C.D. Cal., Sept. 18, 2014) ..................................................................... 20

*Double Zero v. TJX Companies*,
  No. CV 10-5241 CBM, 2011 WL 13217235
  (C.D. Cal., July 21, 2011) ....................................................................... 10

*Educational Testing Services v. Simon*,
  95 F. Supp. 2d 1081 (C.D. Cal. 1999) .................................................... 20

*Electropix v. Liberty Livewire Corp.*,
  178 F. Supp. 2d 1125 (C.D. Cal. 2001) ............................................. 15, 17

*Entrepreneur Media, Inc. v. Smith*,
  279 F.3d 1135 (9th Cir. 2002) ................................................................. 13

*Fowler v. Varian Associates, Inc.*,
  196 Cal. App. 3d 34 (1987) ..................................................................... 25

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*,
  826 F.2d 837 (9th Cir. 1987) ................................................................ 14

*GoTo.com, Inc. v. Walt Disney Co.*,
  202 F.3d 1139 (9th Cir. 2000) .............................................................. 15

*Hokto Kinoko Co. v. Concord Farms, Inc.*,
  810 F. Supp. 2d 1013 (C.D. Cal. 2011) ........................................... 11, 12

*Jada Toys, Inc. v. Mattel, Inc.*,
  518 F.3d 628 (9th Cir. 2007) ................................................................ 12

*Lahoti v. VeriCheck, Inc.*,
  586 F.3d 1190 (9th Cir. 2009) .............................................................. 10

*Lahoti v. Vericheck, Inc.*,
  636 F.3d 501 (9th Cir. 2011) ................................................................ 13

*Magic Link Garment Ltd. v. ThirdLove, Inc.*,
  445 F. Supp. 3d 346 (N.D. Cal. 2020) ................................................. 10

*Markos v. Sears Roebuck & Co.*,
  No. CV-53051-CBM(SSx), 2017 WL 5162458
  (C.D. Cal., Feb. 13, 2017) ................................................................... 11

*Milton H. Greene Archives, Inc. v. BPI Communications, Inc.*,
  378 F. Supp. 2d 1189 (C.D. Cal. 2005) ............................................... 20

*Network Automation, Inc. v. Advanced Systems Concepts, Inc.*,
  638 F.3d 1137 (9th Cir. 2011) ......................................................... 12, 14

*New Form, Inc. v. Tekila Films, Inc.*,
  357 Fed. Appx. 10 (9th Cir. 2009) ...................................................... 20

*Nutri/System, Inc. v. Con-Stan Industries, Inc.*,
  809 F.2d 601 (9th Cir. 1987) ................................................................ 15

*Ossur hf v. Manamed, Inc.*,
  331 F. Supp. 3d 1005 (C.D. Cal. 2017) ............................................... 11

*QS Wholesale, Inc. v. Worldwide Marketing, Inc.*,
  No. SA 12-CV-0451(RNBx), 2013 WL 1953719
  (C.D. Cal., May 9, 2013) ..................................................................... 18

iv

*Quia Corp. v. Mattel, Inc.*,
  No. 10-1902 JF (HRL), 2011 WL 2749576
  (N.D. Cal., July 14, 2011) ................................................................... 18

*Phillip Morris USA Inc. v. Shalabi*,
  352 F. Supp. 2d 1067 (C.D. Cal. 2004) ........................................... 17, 20

*Pom Wonderful LLC v. Hubbard*,
  775 F.3d 1118 (9th Cir. 2014) ............................................................ 11

*R/C Theatres Management Corp. v. Metro Movies, LLC*,
  44 F. Supp. 3d 626 (D.C. Md. 2014) .................................................... 17

*Rosenfeld v. JP Morgan Chase Bank, N.A.*,
  732 F. Supp. 2d 952 (N.D. Cal. 2010) .................................................. 23

*Sanrio, Inc. v. Ronnie Home Textile, Inc.*,
  No. CV-14-06369-RSWL-JEMx, 2016 WL 5956096
  (C.D. Cal., Jan. 5, 2016) ..................................................................... 16

*Stone Creek, Inc. v. Omnia Italian Design, Inc.*,
  875 F.3d 426 (9th Cir. 2017) ............................................................... 16

*StrikePoint Trading, LLC va. Sabolyk*
  No. SACV-07-1073-DOC (MLGx), 2008 WL 11334084
  (C.D. Cal., Dec. 22, 2008) ................................................................... 25

*Surfvivor Media, Inc. v. Survivor Products*,
  406 F.3d 625 (9th Cir. 2005) ............................................................... 15

*Symantec Corp. v. CD Micro, Inc.*,
  286 F. Supp. 2d 1278 ........................................................................... 20

*Synoptek, LLC v. Synaptek Corp.*,
  309 F. Supp. 3d 825 (C.D. Cal. 2018) ....................................... 12, 13, 14

*Techno Lite, Inc. v. Emcod, LL.*,
  44 Cal. App. 5th 462 (2020) ................................................................ 25

*Three Boys Music Corp. v. Bolton*,
  212 F.3d 477 (9th Cir. 2000), *cert. denied*, 531 U.S. 1126 (2000) ...................... 20

*Time Warner Entertainment-Advance/Newhouse Partnership v.*
   *Steadfast Orchard Park, L.P.*,
   No. EDCV 07-473-VAP(OPX), 2008 WL 4350054
   (C.D. Cal., Sept. 23, 2008) ...................................................................11

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
   505 U.S. 763 (1992) .............................................................................13

*UL LLC v. Space Chariot Inc.*,
   250 F. Supp. 3d 596 (C.D. Cal. 2017)..................................................20

*UMG Recordings, Inc. v. Disco Azteca Distributors, Inc.*,
   446 F. Supp. 2d 1164 (E.D. Cal. 2006).................................................20

*Vallavista Corp. v. Amazon.com, Inc.*,
   657 F. Supp. 2d 1132 (N.D. Cal. 2008).................................................17

*VersaTop Support Systems, LLC v. Georgia Expo, Inc.*,
   921 F.3d 1364 (Fed. Cir. 2019) .............................................................11

*Vision Sports, Inc. v. Melvile Corp.*,
   888 F.2d 609 (9th Cir. 1989) .................................................................17

*In re Vylene Enterprises, Inc.*,
   90 F.3d 1472 (9th Cir. 1996) .................................................................23

*Williams-Sonoma v. Amazon.com, Inc.*,
   Case No. 18-CV-07548-EDL, 2019 WL 7810815
   (N.D. Cal., May 2, 2019).......................................................................19

*Yi v. Circle K Stores, Inc.*,
   258 F. Supp. 3d 1075 (C.D. Cal. 2017), *aff'd*, 747 F. App'x 643
   (9th Cir. 2019) .......................................................................................22

**Rules**

Fed. R. Civ. P. 56(a) .....................................................................................11

**Statutes**

15 U.S.C. § 1117.............................................................................................20

17 U.S.C. § 1117.............................................................................................20

**Other Authorities**

Trademark Manual of Examining Procedure § 1207.01
   (8th ed., October 2018) ............................................................................ 14

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

In March 2018, Dr. Robert Cornell ("Cornell") attended a confidential Penuma physician training program with Dr. James Elist, the inventor of the only FDA-cleared cosmetic male penile implant, Penuma. Cornell signed a non-disclosure agreement during that training visit, which Plaintiffs required due to the sensitive nature of the information Dr. Elist shared with Cornell that day. After Cornell returned to Texas, he began using the Penuma trademark on his website and in other marketing efforts. But Cornell had not completed Penuma training and was not authorized to use the Penuma mark in commerce. Plaintiffs later learned that Cornell had used the confidential trade secret information he learned from Dr. Elist and others at Penuma training as the basis for patent applications to protect a competing implant Cornell claims to have invented, Augmenta. But Augmenta is merely a poor embodiment of Plaintiffs' trade secrets.

On January 20, 2021, this Court entered a preliminary injunction against Cornell other defendants on the ground that "Plaintiffs are likely to prevail on the merits of their claims against Defendants for trademark infringement . . . and trade secret misappropriation[.]" Dkts. 137; 138; 139. Having completed fact discovery, Plaintiffs should now prevail on several claims based on the undisputed factual record.

Plaintiffs use the protected mark they created, "Penuma," in commerce to market the Penuma implant. Cornell and Dr. Jonathan Clavell ("Clavell") have admitted under oath to using the exact same Penuma mark on their websites, without Plaintiffs' approval. Cornell used "Penuma" for paid Google search advertising. Because their infringement was willful, Defendants were not deterred by Plaintiffs' multiple cease-and-desist requests. Cornell and Clavell's trademark infringement created confusion in the marketplace and allowed them to divert potential Penuma customers to an Augmenta waiting list. Also, nearly two dozen prospective and actual patients contacted Plaintiffs inquiring as to whether Cornell was authorized to perform

the Penuma implant procedure. This Court may and should rule as a matter of law that Cornell, Clavell and their medical practices, Robert J. Cornell M.D., P.A. ("Cornell PA") and Clavell Urology, PLLC ("Clavell Urology"), are liable for trademark infringement.

Because Cornell, Cornell PA, Clavell, and Clavell Urology copied the Penuma mark and then sought to offer Augmenta in place of Penuma, they are also liable for counterfeiting, Plaintiffs' sixth cause of action.

It is indisputable that defendants Cornell, Hans Mische ("Mische"), and David Nichols ("Nichols") copied and used, without authorization, a still image from Plaintiffs' copyrighted animated video. Defendants used this image in two patent applications for Augmenta to help launch their own competing business. Further co-opting Plaintiffs' work, Nichols used the copyrighted image in a fundraising pitch deck Nichols showed to potential Augmenta investors. Plaintiffs were damaged by these actions. Summary adjudication is warranted for this blatant copyright infringement.

This Court should also grant summary adjudication against Cornell for one of his many breaches of contract. It is undisputed that Cornell signed a non-disclosure agreement with IMD in connection with his participation in a Penuma training program (the "Penuma NDA"). This NDA expressly prohibited Cornell from disclosing confidential information that he acquired during Penuma training. But Cornell admitted he sent IMD's confidential Penuma instrument and supply list to at least one other individual without authorization. This Court should find Cornell liable for this breach as a matter of law.

Wang is also liable for breach of contract. Wang served on IMD's advisory board pursuant to a Consulting Services Agreement with IMD. In violation of that agreement, he simultaneously served as a consultant to Cornell and provided the same type of design input in creating the Augmenta implant that he learned in his capacity as an advisor for IMD – all without Plaintiffs' knowledge or consent. Wang was

compensated for his betrayal; he received a financial interest in Cornell's company, Capital Urology Associates, LLC.

Finally, this Court should grant summary adjudication on Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing against Cornell and Wang. The Penuma NDA was provided pursuant to Cornell's training to become a Penuma surgeon. Cornell's efforts to create a competing implant (aside from his actions in explicit breach of the Penuma NDA), though not explicitly prohibited by contract, deprive IMD of any benefit of the bargain. This applies even more so to Wang, who, in his capacity as a Penuma advisory board member, accessed confidential information and was intimately familiar with Penuma's confidential business and other plans. Wang's actions to help construct a business to compete with Penuma (in particular, one that was based on Penuma's trade secrets), while Wang masqueraded as a loyal advisory board member, violate the covenant of good faith and fair dealing.

The Court should grant summary adjudication on these issues.

## II.   FACTUAL BACKGROUND

### A.   Dr. Elist Creates Penuma, the First and Only FDA-Cleared Cosmetic Penile Implant.

Plaintiff Dr. James Elist, a urologist, holds multiple patents on cosmetic silicone penile implants designed to facilitate tissue expansion. (Plaintiffs' Separate Statement of Uncontroverted Facts ("SUF"), 4.) Those patents protect Penuma, the first and only cosmetic penile implant cleared by the U.S. Food and Drug Administration ("FDA"). *Id*. FDA first cleared Penuma in 2004 and, following design changes, issued clearances in 2017 and 2019. SUF 7.

Since January 2016, Plaintiffs have continuously used the name "Penuma" in commerce. SUF 19. Plaintiffs made up the term "Penuma" which has no meaning in any language. SUF 21. On September 20, 2016, the United States Patent and Trademark Office ("USPTO") approved Plaintiffs' trademark application for the

Penuma mark. The Penuma mark is registered as U.S. Reg. No. 50443348. SUF 23. Menova currently owns the Penuma mark. *Id*.

Plaintiffs published the Penuma website in 2016. SUF 20. Dr. Elist implants maintained a website for his medical practice for many years. *See* SUF 27. IMD and Dr. Elist spend considerable sums advertising Penuma. SUF 27. Dr. Elist has been implanting Penuma implants since the first FDA clearance in 2004. SUF 8. IMD distributes Penuma to a network of authorized surgeons trained by Dr. Elist. SUF 10, 17, 72. Surgeons who train to implant Penuma must sign a non-disclosure agreement at the time of training. SUF 76.

### B.   Plaintiffs Work with a Select Group of Consultants and Advisors to Improve Penuma and Create a Penuma Training Program.

In fall 2017, IMD convened a Penuma advisory board. SUF 14. IMD required all advisory members to enter into a Consulting Services Agreement that included confidentiality. SUF 93. Advisory board members were then given access to Plaintiffs' confidential information to help improve Penuma and create a surgeon training program. SUF 93. On October 6, 2017, Wang entered a Consulting Services Agreement with IMD to serve as a Penuma advisory board member. SUF 94. IMD engaged Wang to "provide assistance in developing strategies and tactics that may be used to educate providers about the Silicone Block Penile Implant and address challenges they may encounter when using the implant." SUF 100. Wang remained on Penuma's advisory board until August 2020. SUF 92.

In the Consulting Services Agreement, Wang acknowledged he would "be given access to substantial and significant Company Confidential Information and trade secrets" and that IMD would suffer immediate and irreparable harm if the information was disclosed and used for the benefit of any competitors. SUF 98. "Confidential Information" is "information Consultant acquires from Company, the terms of this agreement, and any material, information, data, and devices developed in the course of performing the Consulting Services" unless information has become

1   publicly available through no fault of the consultant, lawfully obtained from third
2   parties, or released by the Company in writing. SUF 95. Wang also agreed not to
3   "serve as a researcher, investigator, consultant, employee, or independent contractor,
4   or in any other way perform services to or for the benefit of, any third party regarding
5   the areas involved in this agreement." SUF 99.

6   　　　On October 25, 2017, Wang attended the first Penuma advisory board meeting.
7   SUF 103. After becoming an advisory board member, Wang traveled to Dr. Elist's
8   surgical center in Beverly Hills, California to observe Dr. Elist perform Penuma
9   implant operations and to learn more about Penuma and the implant procedure. SUF
10   104. Wang attended cases in Beverly Hills on January 19, 2018, and April 26, 2018.
11   *Id*. Soon after, Wang co-authored an academic paper on Penuma patient selection
12   protocol and exchanged communications regarding Penuma's FDA clearance. SUF
13   105. In addition, Wang was part of the advisory board meeting in which indications
14   for use for Penuma was discussed. SUF 105. To complete these tasks, Wang had
15   access to confidential Penuma information. SUF 93, 98,109. Wang had access to the
16   Penuma procedure instrument and supplies list. SUF 109. He also had access to IMD's
17   draft versions of research protocols, Penuma articles, and a confidential set of surgical
18   notes. *Id*. Wang also asked questions about future design changes to Penuma,
19   soliciting information regarding IMD's confidential plans for including in future
20   versions of Penuma internal pockets to make it softer and more flexible and mesh tabs
21   with absorbable sutures to secure the implant in place. Dr. Elist Decl., ¶ 23.

22   　　　On June 8, 2018, Wang signed an amendment to the Consulting Services
23   Agreement. SUF 106. Wang was retained "to help establish a physician training
24   program" and develop a protocol for a registry that would allow urology leaders to
25   evaluate the risks and benefits of the Penuma implant procedure. SUF 107. Wang
26   helped design the Penuma surgeon training program, which IMD and Dr. Elist
27   implemented to provide training to qualified urologists regarding Penuma. IMD paid
28   Wang consulting fees for his efforts as an advisory board member. SUF 108. On April

17, 2019, Dr. Elist proctored the first Penuma case performed by Wang, which completed Wang's Penuma training. SUF 110.

### C.   Defendant Cornell Signs the Penuma NDA, Learns Plaintiffs' Confidential Information, then Shares it Without Consent.

On January 11, 2018, defendant Robert J. Cornell, M.D. ("Cornell"), a Houston-based urologist, contacted Penuma's distributor, Gesiva Medical, LLC ("Gesiva"), to express interest in receiving Penuma training. SUF 72. Duncan Louie, a Gesiva representative,[1] helped Cornell arrange a visit to Dr. Elist's Beverly Hills office to begin the training to become a Penuma authorized surgeon. *Id*. On March 30, 2018, Cornell, accompanied by Louie, traveled to Beverly Hills and began his Penuma training. SUF 75. At this training session, Cornell the Penuma NDA which, among other things, prohibited him from "us[ing] directly or indirectly the Confidential Information for its own benefit or benefit of any other person." SUF 77. "Confidential Information" includes information about "past, present, or future products, services, [] techniques or technical information and data." SUF 78.

During the training session, Cornell asked various questions, including questions about Plaintiffs' plans for Penuma. (Declaration of Dr. James Elist in Support of Motion for Partial Summary Judgment ("Dr. Elist Decl.") ¶ 28.) These questions elicited the reveal of confidential and trade secret information, which Dr. Elist shared only because he understood it would be kept confidential. *Id*. In addition, Cornell asked Mr. Louie to send him the confidential list of surgical instruments and materials used for the Penuma implant procedure. On April 2, 2018, pursuant to the Penuma NDA, Mr. Louie sent Cornell the confidential Penuma surgical instruments and supplies list ("Penuma Instruments and Supplies List"). SUF 82. Dr. Elist created that list specifically for the Penuma procedure based on years of experience. SUF 83. Dr. Elist and IMD have not publicly shared the list and have kept it confidential. SUF

---

[1] As a Gesiva representative, Louie was also subject to a confidentiality agreement with IMD. SUF 84.

84. IMD authorized Gesiva to send the list only to surgeons who have started Penuma training and are bound by an NDA. *Id*.

Days after the March 30, 2018 training session, Cornell began to work with an engineer Hans Mische on a competing cosmetic penile implant, Augmenta. SUF 85. On April 9, 2018, without authorization, Cornell sent Mische the Penuma Instruments and Supplies List. SUF 86. Cornell never returned the Penuma Instrument and Supply list. SUF 88.

Cornell later enlisted the help of several others to design and develop the Augmenta implant, including defendants Dr. Jonathan Clavell, David Nichols, and Dr. Run Wang. SUF 89. Plaintiffs assert in this lawsuit that Cornell used several of IMD's confidential design concepts while creating the Augmenta implant. On January 3, 2019, defendants Cornell, Mische and Nichols were named as inventors on two patent applications related to Augmenta. SUF 65. Both patent applications included, without authorization, a still image taken from Plaintiffs' copyrighted Penuma video. SUF 67, 70. Both patent applications were approved and made publicly available, including the copied image from the Penuma video. *Id*. Earlier, in November 2018, defendant Huck Medical Technologies, Inc. ("HMT") distributed a pitch deck which included the same still image taken from Dr. Elist's copyrighted Penuma video. SUF 64.

The Penuma video demonstrated a simplified version of the Penuma implant procedure, including an animated anatomical image of a penis depicting the placement of a Penuma implant following implantation. SUF 61. The still image from the video that was copied and published shows the placement of the Penuma after implantation. SUF 64. Cornell, Mische, and Nichols used it to similarly depict implantation of the Augmenta implant. SUF 65, 68.

**D.  Defendants Cornell and Clavell Infringe the Penuma Trademark**

In April 2018, while Cornell was working to develop Augmenta, Cornell began promoting himself on his medical practice website as a "Penuma Penile Enhancement

Specialist" who "provides Penuma penile enhancement surgery." SUF 35. Cornell referred to Penuma as "the best method to permanently and safely increase the size of your penis." SUF 35. Cornell had not received authorization from Plaintiffs to offer Penuma or use the Penuma trademark. SUF 37. Cornell understood additional training was required before he could offer Penuma. SUF 31.

Cornell instructed his marketing team to run targeted ads on Google for searches for the keyword Penuma. SUF 39. ("I'd prefer the time was allocated to getting the Penuma… [Google] adwords/SEO going.") As a result, a search for "Penuma Houston" served Cornell's Penuma ads as top results on Google. SUF 40. Cornell's Google ads strongly implied he offered Penuma. SUF 41. Through these targeted ads, Cornell's website received traffic from users searching for Penuma. SUF 42. Cornell never received authorization to use the Penuma mark in his advertisements or otherwise. SUF 38.

IMD sent two cease and desist letters demanding that Cornell refrain from use of the Penuma mark. SUF 44, 46, In June 2018, shortly after IMD first learned of Cornell's unauthorized use of the Penuma mark on his website, IMD wrote Cornell demanding that he "immediately take down any Penuma-related content" and "cease and desist from posting any future Penuma-related content on your website or elsewhere" until specifically authorized by IMD. SUF 44. Cornell received the email but did not reply. *Id*. Around this time, Mr. Louie also directed Cornell to remove Penuma references from his website because he was not authorized to display them. SUF 45. Cornell told Louie he would have his web designer remove them, but this did not occur for another two years. SUF 45, 47.

IMD sent a second cease and desist letter on August 4, 2019. SUF 46. In response, Cornell represented that all mentions of Penuma would be removed. *Id*. However, Cornell did not remove all Penuma references from his website until this lawsuit was filed in April 2020 and did not stop placing Penuma ads on Google

searches until May 2020. SUF 47-48. Cornell's Penuma ads led to John M.[2] contacting Cornell's office regarding Penuma. SUF 57. John M. saw Cornell's Penuma ads while searching online for information regarding Penuma. *Id*. John M. subsequently meet with Cornell under the auspices of receiving a Penuma implant. *Id*. Rather than providing John M. with the Penuma he wanted, Cornell advised John M. to wait for Augmenta. Cornell kept a waiting list of potential patients for the Augmenta implant that included at least 55 names. SUF 57-58.

When this action was filed, Clavell's website implied that Clavell also performed Penuma procedures. SUF 54. Clavell's website stated that a ventral or cosmetic phalloplasty could be performed in conjunction with a Penuma procedure, suggesting Clavell could perform both procedures at once. SUF 53.

As a result of this marketing by Defendants Cornell and Clavell, Plaintiffs have received no fewer than 23 calls and messages from actual or potential patients expressing confusion over the availability of the Penuma implant in Texas by Cornell. SUF 53. Plaintiffs created a business record, which was regularly updated and maintained to track these calls. *Id*.

**E.    Wang Advises Augmenta Breaching His Agreement with IMD.**

Wang was a Penuma advisory board member. He had agreed to refrain from working with third parties developing cosmetic penile implants. Nevertheless, Wang began working with Defendants to design and develop Augmenta. SUF 112-114. On November 6, 2018, Wang entered into a mutual non-disclosure agreement with Augmenta Investors LLC. SUF 112. Wang did not disclose his work with Augmenta to Plaintiffs despite multiple opportunities to do so. SUF 123.

Wang secretly assisted with Augmenta's development and implant design, while simultaneously serving on Penuma's advisory board. SUF 92, 112, 123. For

---

[2] To protect his privacy, Plaintiffs submitted a declaration from a third-party witness under the name "John M." This declarant's full name was disclosed to Defendants in June 2021.

instance, Wang performed an Augmenta implant cadaver study in December 2018 to determine if the surgical implantation method was feasible. SUF 115. Once the cadaver study was complete, Wang provided an assessment of the Augmenta implant procedure and commented that the design of the Augmenta implant may make the implant too heavy. SUF 116. Wang also provided his input on the design of the implant, including expressing a concern over the use of mesh along the bottom edge of the Augmenta implant and stating that he did not like the implant's sharp tip. SUF 117. In exchange for his "invaluable design" feedback, on July 1, 2019, Cornell provided Wang with a stake in defendant Capital Urology Associates LLC, a 1% ownership interest in Augmenta, LLC. SUF 117, 119.

On July 30, 2019, Wang returned to Beverly Hills to observe more Penuma cases. SUF 122. In February 2020, Dr. Elist learned Wang was listed as CEO of Augmenta, LLC on the Augmenta website. SUF 124.

## III.   LEGAL STANDARD

Under Fed. R. Civ. Proc. 56, a party is entitled to summary judgment of an entire claim or for summary adjudication "to determine certain facts or elements of a claim as established." *Magic Link Garment Ltd. v. ThirdLove, Inc.*, 445 F. Supp. 3d 346, 355 (N.D. Cal. 2020); *see also Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1202 n.9 (9th Cir. 2009). Because a court can adjudicate individual elements of a claim, it is proper to grant summary adjudication "on the issue of liability alone, even when there is an issue to the amount of damages[.]" *Markos v. Sears Roebuck & Co.*, 2017 WL 5162458, at *3 (C.D. Cal., Feb. 13, 2017).

The standard for summary adjudication is identical to the standard for summary judgment. *Time Warner Ent.-Advance/Newhouse P'ship v. Steadfast Orchard Park, L.P.*, No. EDV 07-472-VAP(OPX), 2008 WL 4350054, at *6 (C.D. Cal., Sept. 23, 2008). The moving party is entitled to move for judgment as a matter of law when admissible evidence establishes that "there is an absence of genuine issues of material facts." *Double Zero v. TJX Companies*, No. CV 10-5241 CBM(JCGX), 2011 WL

13217235 at *1 (C.D. Cal., July 21, 2011); *see also* Fed. R. Civ. P. 56(a). A fact is material when it "might affect the outcome of the suit under governing law" and an issue is genuine "only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." *Id.*

## IV.   ARGUMENT

### A.   This Court Should Grant Summary Adjudication on Plaintiffs' Fifth Cause of Action for Trademark Infringement

Defendants Cornell and Clavell (and their medical practices, Cornell PA and Clavell Urology) indisputably used the protected "Penuma" mark on their websites without authorization and in a manner that caused confusion. Each of the three elements of trademark infringement are met. *See Ossur hf v. Manamed Inc.*, 331 F. Supp. 3d 1005, 1011 (C.D. Cal. 2017) (defendant liable for trademark infringement when (1) the mark is protected; and (2) the defendant used the mark in commerce (3) in a manner likely to cause confusion); *Hokto Kinoko Co. v. Concord Farms, Inc.*, 810 F. Supp. 2d 1013, 1029 (C.D. Cal. 2011).

#### 1.   Penuma is a Registered Trademark

Where "proof of registration is uncontested, the ownership interest element of a trademark infringement claim is met." *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014). That is the case here. The trademark application for Penuma was filed January 10, 2016. SUF 22. As of September 20, 2016, Penuma is a registered trademark owned by Plaintiff Menova. SUF 23.

#### 2.   Cornell and Clavell Used the Penuma Mark to Offer Cosmetic Penile Implants

Courts examine the totality of the circumstances to determine whether a mark is used "in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark." *Brookfield Commc'ns., Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1052 (9th Cir. 1998); *see also VersaTop Support Sys., LLC v. Ga. Expo, Inc.*, 921 F.3d 1364, 1371-72 (Fed. Cir. 2019) ("use in commerce" element met by use of competitor's marks in

"advertising and brochures").

Cornell began his unauthorized use of the Penuma mark in commerce as early as April 2018, when he used the mark to run targeted Google ads. SUF 35, 38, 42. The Ninth Circuit has held that the trademark infringement element "use in commerce" is satisfied where (as here) the alleged infringer uses a mark as a search engine keyword for online advertisements. *Network Automation, Inc. v. Advanced Systems Concepts, Inc.*, 638 F.3d 1137, 1144-1145 (9th Cir. 2011).

Cornell and Clavell used the Penuma mark in commerce on their practice websites. Cornell displayed the Penuma mark on his website, promoting himself as a "Penuma enhancement specialist." SUF 35. Clavell advertised on his website that he could perform a Penuma implant procedure. Clavell continued this unauthorized use of the mark up until the day this suit was filed. SUF 52-54.

### 3. Cornell and Clavell's Use of the Penuma Mark in Their Urology Medical Practices Caused Confusion

The Ninth Circuit applies the "*Sleekcraft* factors" to determine whether an alleged trademark infringer's use of a mark creates a likelihood that the consuming public will be confused. *Brookfield*, 174 F.3d at 1054; *see also AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). This test is a "pliant" one; the facts "need not be mechanically added up" to find a likelihood of confusion. *Hokto Kinoko*, 81 F. Supp. 2d at 1029. "Two particularly probative factors are the similarity of the marks and the proximity of the goods." *Synoptek, LLC v. Synaptek Corp.*, 309 F. Supp. 3d 825, 836 (C.D. Cal. 2018); *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632-33 (9th Cir. 2008) (the Ninth Circuit applies "all the relevant factors, noting that a final likelihood of confusion determination may rest on those factors that are of the most relative importance in any particular case.") (citing *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 631-34 (9th Cir. 2005)). Analysis of the *Sleekcraft* factors supports likelihood of confusion.

### (a) The Penuma mark is fanciful, arbitrary, and warrants the maximum protection under the law

The first *Sleekcraft* factor – the strength of the mark – indisputably weighs in Plaintiffs' favor. The strength of the mark is a key factor with two components: the mark's inherent distinctiveness and its recognition in the market. *Lahoti v. Vericheck, Inc.*, 636 F.3d 501, 508 (9th Cir. 2011). A mark is classified in one of the following four groups, listed in ascending order of strength: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992). The stronger the mark, the more protection it is afforded. *Sleekcraft*, 599 F.2d at 349. The strongest marks that receive the maximum trademark protection are "arbitrary" or "fanciful." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1141 (9th Cir. 2002).

The Penuma mark has a high degree of inherent distinctiveness. "Penuma" is a fanciful or arbitrary mark; it does not describe a feature of Plaintiffs' goods or services. SUF 21. Plaintiffs invented the term. *Id*. The Penuma mark is also widely recognized in the market. Plaintiffs have spent considerable sums marketing Penuma. SUF 28. It is known as the only FDA-cleared cosmetic penile implant. Penuma has been profiled by at least 36 different publications including magazines such as GQ and Cosmopolitan. Penuma has also been featured in academic journals and on digital health sites. SUF 62.

### (b) Cornell and Clavell Advertised Cosmetic Penile Implants under the Penuma Mark that Are in Close Proximity.

Goods or services are close in proximity or related where they are complementary, sold to the same class of purchasers, or are similar in use or function. *Sleekcraft*, 599 F.2d at 350 (citations omitted); *see also Synoptek*, 309 F. Supp. 3d at 838 (related goods or services are those "reasonably thought by the buying public to come from the same source if sold under the same mark"). This factor weighs decisively in favor of Plaintiffs. Plaintiffs, Cornell and Clavell targeted the same niche market: men seeking cosmetic penile implant surgery. *See* SUF 29, 33-34, 49. They

advertised implants that are similar in use and function. *See* SUF 42, 53. This is not surprising since Defendants based their product on trade secrets, intended to improve Penuma.

### (c) Cornell and Clavell Used the Exact Same Mark as Plaintiffs.

The greater the similarity between the two marks at issue, the greater the likelihood of confusion. *Synoptek,* 309 F. Supp. at 836, *citing GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1206 (9th Cir. 2000). Similarity in either form, spelling, or sound alone may be sufficient to support a finding of likelihood of confusion. *Synoptek*, 309 F. Supp. 3d at 837-38; *see also* TMEP § 1207.01(c)(ii) (8th ed. Oct. 2018) (citing *In re Viterra Inc*, 671 F.3d 1358, 1366 (Fed. Cir. 2012).

Cornell and Clavell each admitted to using the Penuma mark on the websites of their respective practices. SUF 35-36, 51-54. They used the exact same spelling and design as the Penuma mark registered to Menova. Thus, a reasonable consumer would undoubtedly consider goods or services offered on sites bearing the infringing Penuma mark to be from Plaintiffs.

### (d) There Is Evidence of Actual Consumer Confusion.

Under the fourth *Sleekcraft* factor, a showing of "actual confusion" constitutes "persuasive proof that future confusion is likely." *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 845 (9th Cir. 1987). However, evidence of actual confusion is not required to show a likelihood of confusion. *Network Automation, Inc. v Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1151 (9th Cir. 2011); *see also Sleekcraft*, 599 F.2d at 352 (producing proof of "actual confusion is difficult . . . and the courts have often discounted such evidence because it was unclear or insubstantial.").

On multiple occasions, Dr. Elist's office has been contacted by potential customers who have exhibited confusion about whether Cornell is an authorized Penuma physician. And John M. testifies that he found Cornell's Penuma Google

advertisements searching for a Penuma implant. Based on Cornell's Penuma ads on Google, John M. (incorrectly) believed that Cornell offered Penuma. When John M. met with Cornell for a consultation, Cornell told him for the first time that he did not actually perform Penuma implant surgeries. Cornell then advised John M. to get an Augmenta penile implant instead and placed him on the Augmenta waiting list. There are over 50 other individuals on Defendants' Augmenta waiting list.

### (e)   The Parties Use Similar Marketing Channels

Under the fifth *Sleekcraft* factor, courts examine whether the parties used similar marketing channels. *Nutri/System, Inc. v. Con-Stan Indus., Inc.*, 809 F.2d 601, 606 (9th Cir. 1987). The internet is a factor "that courts have consistently recognized as exacerbating the likelihood of confusion." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d at 1207. "[T]he Web, as a marketing channel, is particularly susceptible to a likelihood of confusion since, as it did in this case, it allows for competing marks to be encountered at the same time, on the same screen." *Id.*

The evidence establishes the parties used the Penuma mark in similar marketing channels. Plaintiffs used the mark on their website and in other marketing materials. SUF 27. Cornell and Clavell admittedly did the same. SUF 35, 53. Cornell used the Penuma mark in his Google AdWords campaign. SUF 42. Cornell and Clavell's unauthorized use of the Penuma mark on their websites confused customers.

### (f)   Reasonably Prudent Customers Cannot be Expected to Distinguish Between Two Product Lines When an Identical Mark Is Used

The sixth *Sleekcraft* factor asks whether a "reasonably prudent consumer" would take the time to distinguish between the two product lines. *Survivor Media, Inc., v. Survivor Prods.*, 406 F.3d 625, 634 (9th Cir. 2005). "[V]irtually no amount of consumer care can prevent confusion where two entities have the same name." *Electropix v. Liberty Livewire Corp.*, 178 F. Supp. 2d 1125, 1134 (C.D. Cal. 2001) ("it is irrational to expect that even the most sophisticated consumer will exercise the

kind of scrupulous examination that would enable him or her to discern the difference between "Livewire" and "Live Wire.").

Cornell and Clavell highjacked Plaintiffs' exact mark and displayed it on their websites; Cornell used it in targeted Google ads. *See* SUF 35, 41, 42, 53. Consumers were not able to distinguish the marks posted on Cornell and Clavell's websites from the genuine article because Cornell and Clavell used the exact same protected mark. Further, doctors are generally viewed as trusted experts in our society; a reasonable consumer would have little reason to investigate the veracity of products listed on a physician's website. Accordingly, this factor decisively tilts in favor of Plaintiffs.

### (g)   Defendants Willfully Adopted Plaintiffs' Mark.

Under the seventh *Sleekcraft* factor, "when the alleged infringer intended to deceive customers, [the Court] infer[s] that its conscious attempt to confuse did in fact result in confusion." *Stone Creek, Inc. v. Omnia Italian Design, Inc.* 875 F.3d 426, 434 (9th Cir. 2017). "Recognizing the difficulty of collecting evidence of a party's motive, [the Ninth Circuit has] held that choosing a designation with knowledge that it is another's trademark permits a presumption of intent to deceive." *Id*. (citation omitted). "[W]here the alleged infringer adopted his mark with knowledge, actual or constructive, that it was another's trademark," resolution of this factor favors the plaintiff. *Sanrio, Inc. v. Ronnie Home Textile, Inc.*, 2016 WL 5956096, at *11 (C.D. Cal., Jan. 5, 2016).

Here, Drs. Elist, Cornell, and Clavell worked in the same insular, tightly knit urological medical community. Dr. Elist has been using the name Penuma in commerce since at least January 2016. SUF 19. Cornell signed the Penuma NDA after attending a Penuma training session in Beverly Hills, and either knew or should have known that Plaintiffs owned the Penuma mark. Further, Cornell continued to advertise the Penuma mark, even after Plaintiffs sent him cease-and-desist letters demanding he remove the mark from his website. SUF 46, 48. Cornell and Clavell's brazen use

of the Penuma mark must be seen for what it was: a transparent, willful attempt to confuse and siphon off customers seeking Penuma.

### (h)   Defendants Intended to Expand into Plaintiffs' Product Line.

Under the eighth and final *Sleekcraft* factor, "a 'strong possibility' that either party may expand his business to compete with the other will weigh in favor of finding that the present use is infringing." *Electropix*, 178 F. Supp. 2d at 1135 (citing *Sleekcraft*, 599 F.2d at 354 (internal citations omitted)). Because Cornell and Clavell illegally elbowed their way into Plaintiffs' product line—indeed forcing Plaintiffs to seek injunctive relief from this Court—this factor supports a finding of likelihood of confusion.

With each of the eight *Sleekcraft* factors decisively favoring Plaintiffs, Plaintiffs have established a likelihood of confusion and are entitled to relief.  When, as here, likelihood of confusion is established, "[i]rreparable harm to reputation and goodwill is presumed as a matter of law" and permanent injunctive relief is appropriate. *Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1074-75 (C.D. Cal. 2004); *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 612 (9th Cir. 1989) ("In trademark infringement or unfair competition actions, once the plaintiff establishes a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief is not granted.)"

Plaintiffs are also entitled to monetary damages, with the amount of damages to be reserved for the trier of fact.[3] Damages are typically measured by any direct injury which a plaintiff can prove, and are permitted "based on the totality of the circumstances." *Vallavista Corp. v. Amazon.com, Inc.*, 657 F. Supp. 2d 1132, 1139 (N.D. Cal. 2008). Here, Defendants willfully used the Penuma mark, luring customers

---

[3] Notably, a plaintiff need not prove actual damages to prevail on a trademark infringement claim. *See R/C Theatres Mgmt. Corp. v. Metro Movies, LLC*, 44 F. Supp. 3d 626, 636 (D.C. Md. 2014) (plaintiff prevailing on the merits of a trademark "need not prove actual damages" and was entitled "to at least nominal damages").

to their offices to dissuade them from visiting other licensed Penuma practitioners. SUF 57. As a result of this infringement, Defendants have siphoned off a considerable amount of Plaintiffs' business; Cornell alone has an Augmenta waiting list with over fifty patients. SUF 58. Of course, IMD has records of numerous potential patients confused by Defendants' trademark infringement.

Another measure of damages available to Plaintiffs is for lost royalty payments. *Bauer Bros., LLC v. Nike, Inc.*, 159 F. Supp. 3d 1202, 1214 (S.D. Cal. 2016). "[L]ike other modes of calculating lost profits," lost royalties "must be proved with reasonable certainty as to both occurrence and extent." *Quia Corp. v. Mattel, Inc.*, 2011 WL 2749576, at \*6 (N.D. Cal., July 14, 2011). However, courts will award lost royalty damages when, as here, no prior licensing agreement existed "if the evidence provides a sufficiently reliable basis from which to calculate them." *QS Wholesale, Inc. v. Worldwide Mktg., Inc.*, 2013 WL 1953719, at \*4 (C.D. Cal., May 9, 2013). Here, Plaintiffs have been damaged by lost revenue that would have been earned either directly or through arrangements with the network of implanting physicians, which payments are akin to license fees.

The Court should grant summary adjudication against defendants Cornell, Clavell and their medical practices as to the trademark infringement claim. The Court should enter a permanent injunction to prohibit further infringement.

### B. This Court Should Grant Summary Adjudication on Plaintiffs' Sixth Cause of Action for Use of a Counterfeit Mark Against Cornell, Clavell and their Medical Practices

Counterfeiting under the Lanham Act arises where a defendant "counterfeit[s] a registered mark in connection with the sale, offering for sale, distribution, or advertising of goods or services where it is likely to cause confusion in consumers." *Williams-Sonoma v. Amazon.com, Inc.*, 2019 WL 7810815, at \*3 (N.D. Cal., May 2, 2019). A counterfeit is a "spurious mark which is identical with, or substantially indistinguishable from a registered mark." 15 U.S.C. § 1127.

"[A] counterfeit claim is merely the hard core or first degree of trademark

infringement, and there is nothing in the statutory language of Section 1114 that suggests that a counterfeit claim should be construed any differently from an infringement claim." *Arcona, Inc. v. Farmacy Beauty, LLC*, 976 F.3d 1074, 1079 (9th Cir. 2020) (quoting *Gibson Brands, Inc. v. John Hornby Skewes & Co.*, 2016 WL 7479317, at *5 (C.D. Cal., Dec. 29, 2016) (internal citations omitted). The Ninth Circuit in *Arcona* recently clarified that the *Sleekcraft* "likelihood of confusion test" used in standard trademark infringement claims also applies to counterfeiting claims.

"[C]ounterfeiting need not always involve the use of a trademark in connection with the sale of the counterfeiter's manufactured good that it attempts to pass off as goods made by the trademark owner, and *may involve the use of service marks*." *Williams-Sonoma*, 2019 WL 7810815, at *3 (emphasis added). *Williams-Sonoma* found Amazon's use of Williams-Sonoma's protected mark in advertising and on amazon.com to resell Williams-Sonoma merchandise could "cultivate the incorrect impression that these sales on amazon.com are authorized by Williams-Sonoma and that a reasonably prudent consumer is likely to be confused." *Id*. at *6.

All the elements of a counterfeit claim are met here. Cornell and Clavell both admit to the first element, conceding in their depositions that they advertised the spurious Penuma mark on their websites. SUF 35-36, 51-53.  The second element, likelihood of confusion, cannot be disputed. A patient seeing the Penuma mark on the websites of Drs. Cornell or Clavell would have, quite reasonably, operated under the (incorrect) assumption that these doctors sold and implanted Penuma. While the counterfeit Penuma mark was still up on his practice's website and was included in his targeted Penuma Google ads, Cornell conducted consultations with patients regarding penile implant surgery. SUF 57; John M. Declaration ¶¶ 4-5. As the declaration of John M. demonstrates, reasonably prudent patients scheduling and attending such consultations would have cultivated the incorrect impression that Cornell was authorized to perform Penuma implants, or that the procedure would be performed under Plaintiffs' imprimatur.

Cornell's infringement was knowing and intentional. Cornell sought out Penuma training. He then agreed to the Penuma NDA. SUF 77. Cornell knew the Penuma mark did not belong to him. SUF 31, 44. Even worse, Cornell continued to display the counterfeit mark on his practice's website after receiving multiple cease-and-desist letters from Plaintiffs. SUF 44-47. Under 15 U.S.C. § 1117(c), which sets forth statutory damages for counterfeit mark, Plaintiffs are entitled to the maximum statutory damages award of $2,000,000 for use of the spurious Penuma mark. Alternatively, this brazen, intentional misappropriation of Plaintiffs' mark warrants the imposition of treble damages. *See* 15 U.S.C. § 1117(b); *Symantec Corp. v. CD Micro, Inc.,* 286 F. Supp. 2d 1278, 1282 (D. Or. 2003) (treble damages at summary judgment stage when seller of software had been repeatedly informed by plaintiff and customers that his products were counterfeit).[4] Plaintiffs are also entitled to reasonable attorneys' fees. 17 U.S.C. § 1117(a).

## C.    Cornell, Mische and Nichols Infringed Plaintiffs' Copyright

To prevail on a copyright infringement claim, a plaintiff must establish "(1) ownership of the copyright; and (2) infringement—that the defendant copied protected elements of the plaintiff's work." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000), *cert. denied*, 531 U.S. 1126 (2000). Under Section 410(c) of the Copyright Act, a copyright certificate constitutes prima facie evidence of the validity of the copyright. *Milton H. Greene Archives, Inc. v. BPI Commc'ns,*

---

[4] At a minimum, Plaintiffs are entitled to statutory damages for a counterfeit claim. "[A] plaintiff may recover statutory damages whether or not there is adequate evidence of the actual damages suffered by the plaintiff or of the profits reaped by defendant." *UL LLC v. Space Chariot Inc.*, 250 F. Supp. 3d 596, 614-15 (C.D. Cal. 2017) (citing *Peer Int'l Corp. v. Pausa Recs., Inc.*, 909 F.2d 1332, 1337 (9th Cir. 1990) (alteration in original)); *New Form, Inc. v. Tekila Films, Inc.*, 357 Fed. Appx. 10, 11–12 (9th Cir. 2009) ("[t]here is no required nexus between actual and statutory damages"). These cases focus on statutory damages under the Copyright Act, but courts apply the same principles for statutory damages on trademark infringement claims brought under the Lanham Act. *See Deckers Outdoor Corp. v. Ozwear Connection Pty Ltd.*, 2014 WL 4679001, at *12 (C.D. Cal., Sept. 18, 2014) (explaining that courts look to precedent related to statutory damages under the Copyright Act when determining statutory damages under the Lanham Act); *Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1075 (C.D. Cal. 2004) (same).

*Inc.*, 378 F. Supp. 2d 1189, 1194 (C.D. Cal. 2005). A plaintiff does need not to prove the defendant *intended* to infringe the copyright to prevail on summary judgment. *UMG Recordings, Inc. v. Disco Azteca Distributors, Inc.,* 446 F. Supp. 2d 1164, 1172 (E.D. Cal. 2006); *Educ. Testing Servs. v. Simon*, 95 F. Supp. 2d 1081, 1087 (C.D. Cal. 1999) (copyright infringement "is a strict liability tort").

Here, Dr. Elist paid $1,650 for the creation of an original Penuma informational video to help promote Penuma, entitled "Penile Enlargement Implant Surgery Animation Video." SUF 60. The video included original imagery, created at Dr. Elist's request to demonstrate the Penuma procedure in a simplified manner to potential patients, which is important given Penuma's status as the only FDA-cleared cosmetic penile implant. SUF 61. He later applied for and received a copyright registration for the video in February 2020. SUF 62. Absent authorization, Cornell, Mische, and Nichols copied a still image of an animated anatomical image of a penis depicting the placement of a Penuma implant from the video and included it in two Augmenta patent applications. SUF 65-70. Both patents issued including the Penuma image. SUF 67, 70. Rather than exert the effort and resources needed to demonstrate where an Augmenta implant may be placed, Cornell, Mische, and Nichols stole Plaintiffs' image and used it for their own gain. *See* SUF 71.

Nichols also used this same still image in a Huck Medical Technologies PowerPoint presentation to Augmenta Investors. SUF 68. Cornell, Mische, and Nichols each infringed on Plaintiffs' protected work. The Court should grant summary adjudication.

### D.    Cornell Breached Express and Implied Contract Terms

Where (as here) there are multiple alleged breaches, courts may resolve certain breaches as a matter of law on summary adjudication. *BlueGEM Sec., Inc. v. Trend Micro Inc.*, No. CV09-1492 ODW (FFMX), 2010 WL 11505702, at *17 (C.D. Cal. June 8, 2010) (granting in part a motion for summary judgment on one breach of contract; allowing trial of other breaches based on different facts). Cornell

entered the Penuma NDA and IMD met its obligations by providing Cornell with training to become a Penuma authorized physician. In return, Cornell repeatedly breached the agreement's explicit terms, as well as the implied covenant.

### 1.     Cornell Breached the Penuma NDA

Cornell admits he signed the Penuma NDA while visiting Dr. Elist to participate in the Penuma training program. SUF 77. As set forth in this agreement, Cornell received "Confidential Information," which Cornell agreed to "protect and hold in the strictest confidence[.]" *Id*. Cornell agreed that he would "not disclose any Confidential Information to any person or entity, unless required by law or other regulatory authority, without the prior written consent of" IMD. SUF 78-80.

IMD fulfilled its contractual obligations – Dr. Elist, provided Cornell with Penuma training as Cornell observed four Penuma implant procedures at Dr. Elist's surgery center. SUF 81. At Cornell's request, on April 2, 2018, a Gesiva representative provided Cornell with the Penuma Instrument and Supply List. SUF 82. This list – which had been developed by Plaintiffs based on years of experience implanting Penuma – was never made available to the public. SUF 83-84. To the contrary, Plaintiffs kept this list confidential and disclosed it only to Gesiva representatives. SUF 84. IMD authorized Gesiva to send the list only to surgeons in the Penuma training program (all of whom – like Cornell – signed NDAs) or their agents. *Id*.

On April 9, 2020, Cornell sent a copy of the Penuma list of surgical supplies and instruments to co-defendant Mische, who Cornell hired to help him design a competing cosmetic silicone penile implant. SUF 86. Cornell did so without IMD's knowledge or written consent, breaching the Penuma NDA. *Id*.

IMD was damaged by Cornell's dissemination of the Penuma Instrument and Supply List. By distributing the list to Mische, Cornell and his fellow defendants bypassed the time and effort Plaintiffs expended to determine the necessary materials for implantation. Although this Court may and should resolve Cornell's liability for

breach of contract as a matter of law, the finder of fact may determine the amount of any damages at a subsequent stage of this case. But this Court should grant summary adjudication in IMD's favor on this breach of contract theory. *See Yi v. Circle K Stores, Inc.*, 258 F. Supp. 3d 1075, 1082 (C.D. Cal. 2017), *aff'd*, 747 F. App'x 643 (9th Cir. 2019) (summary judgment on a breach of contract claim).

### 2.    Cornell Breached the Implied Covenant of Good Faith

Assuming Cornell did not breach an express term of the Penuma NDA (he did), he acted in bad faith by feigning interest in Penuma only to collect know-how for his competing enterprise. "Every contract imposes on each party a duty of good faith and fair dealing in each performance and its enforcement." *Carson v. Mercury Ins. Co.*, 210 Cal. App. 4th 409, 429 (2012) (internal quotation marks omitted). "The covenant 'is based on general contract law and the long-standing rule that neither party will do anything which will injure the right of the other to receive the benefits of the agreement.'" *Rosenfeld v. JP Morgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010) (quoting *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 36 (1995)). Cornell's actions not only deprived IMD of any benefit of the agreement, they significantly harmed IMD and the other Plaintiffs.

Consistent with the purpose of the Penuma NDA, IMD reasonably expected that Cornell would use the Penuma Instrument and Supply List to further his training with the company. Instead, within a matter of days of his Penuma training session, on April 9, 2018, Cornell gave this list to Mische for the purpose of creating a competing implant. SUF 86. Cornell also shared with Mische notes that he had taken during his training session. *See* SUF 90.

Cornell engaged in other bad faith conduct. Cornell testified he decided not to become a Penuma authorized physician in April 2018. SUF 87. Even after he made that decision, Cornell continued to advertise himself as a Penuma authorized physician on his website. SUF 45, 47. Cornell's conduct indisputably caused harm to IMD, which had reasonably expected that a physician in its training program would

not simultaneously develop a competing implant and misuse confidential information. *See In re Vylene Enters., Inc.,* 90 F.3d 1472, 1477 (9th Cir. 1996), *as amended on denial of reh'g and reh'g en banc* (Sept. 12, 1996) (a franchisor breached the covenant of good faith and fair dealing under a franchise agreement by opening a competing restaurant 1.4 miles away from the franchise location because the franchisee "was still entitled to expect that the franchisor would not act to destroy the right of the franchises to enjoy the fruits of the contract").

### E.   Wang Breached His Consulting Agreement With IMD

This Court should rule that Wang breached express and implied terms of the IMD consulting agreement, while reserving a determination of damages until trial.

#### 1.   Wang Breached the Consulting Agreement's Express Terms

Wang entered into the Consulting Services Agreement with IMD on October 6, 2017. SUF 94. Pursuant to that agreement, Wang served on IMD's board of advisors and received compensation for his time and expenses. *See* SUF 102.

Under Section 7.3 of the Consulting Services Agreement, Wang acknowledged he would receive substantial Confidential Information and trade secrets and IMD would suffer harm if Confidential Information was disclosed or used for the benefit of competitors. SUF 98. Wang specifically agreed that "during the term . . . consultant [*i.e.*, Wang] shall not serve as a researcher, investigator, consultant, employee, or independent contractor of, or in any other way perform services to or for the benefit of any third party regarding any of the areas involved in this agreement or enter into any agreement inconsistent with any term of this agreement[.]" SUF 99.

In violation of these express terms, while on the Penuma advisory board, Wang appeared as Augmenta CEO on the Augmenta website, he performed a cadaver lab with the Augmenta device, provided feedback based on the cadaver study, and provided an assessment of the implant insertion procedure. SUF 117, 124. Unsurprisingly, Wang concealed his Augmenta life from Plaintiffs. SUF 123. As a result of Wang's actions, IMD was damaged by a competitor who received the benefit

of Wang's Penuma expertise and experience. Accordingly, this Court should rule that Wang breached Section 7.3 of his Consulting Service Agreement with IMD.

### 2. Wang Breached the Implied Covenant

Wang had an implied duty to not perform services for a direct competitor at least during the term of Wang's service as a member of IMD's advisory board. The Consulting Services Agreement was intended to allow IMD to grow its business. Instead of that, Wang actively helped IMD's competitor, depriving IMD from any benefit of the Consulting Services Agreement. The law does not tolerate this duplicity. *See, e.g., Techno Lite, Inc. v. Emcod, LLC*, 44 Cal. App. 5th 462, 471 (2020) ("California law does not authorize an employee to transfer his loyalty to a competitor [d]uring the term of employment"); *Fowler v. Varian Assocs., Inc.*, 196 Cal. App. 3d 34, 41 (1987) (same). Further, California law recognizes that "competition must remain fair" and allows restrictive covenants if necessary to protect "confidential proprietary information." *StrikePoint Trading, LLC v. Sabolyk*, 2008 WL 11334084, at *4 (C.D. Cal., Dec. 22, 2008). Wang breached his contractual obligations; he also breached the implied covenant.

### CONCLUSION

For the foregoing reasons, this Court should grant this Motion in its entirety. Because there are no genuine disputes as to any material facts, Plaintiffs are entitled to summary adjudication as a matter of law.

Dated: September 14, 2021          WAYMAKER LLP

By:   */s/ Ryan G. Baker*
      Ryan G. Baker
      *Attorneys for Plaintiffs,*
      *INTERNATIONAL MEDICAL DEVICES,*
      *INC., MENOVA INTERNATIONAL, INC.,*
      *and JAMES ELIST, M.D.*

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION