1                    UNITED STATES DISTRICT COURT

2           CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3           HONORABLE CONSUELO B. MARSHALL, U.S. DISTRICT JUDGE

4

5   INTERNATIONAL MEDICAL DEVICES, INC.,    )
    et al.,                                 )
6                                           )
                        Plaintiffs,         )
7                                           )
        vs.                                 )          Case No.
8                                           )  CV 20-3503 CBM (RAOx)
    ROBERT CORNELL, et al.,                 )
9                                           )
                        Defendants.         )
10  _____)

11

12                REPORTER'S TRANSCRIPT OF PROCEEDINGS
       ORDER TO SHOW CAUSE WHY DEFENDANT SHOULD NOT BE HELD IN
13   CONTEMPT FOR VIOLATING THE COURT'S PRELIMINARY INJUNCTION
                      TUESDAY, MAY 17, 2022
14                        10:33 A.M.
                   LOS ANGELES, CALIFORNIA

15

16

17

18

19

20

21

22   _____

23      MYRA L. PONCE, CSR NO. 11544, CRR, RPR, RMR, RDR
             FEDERAL OFFICIAL COURT REPORTER
24           350 WEST 1ST STREET, ROOM 4455
             LOS ANGELES, CALIFORNIA  90012
25                   (213) 894-2305

1                    **APPEARANCES OF COUNSEL:**

2

3    **FOR THE PLAINTIFFS:**

4        WAYMAKER, LLP
         BY:   RYAN G. BAKER
5        BY:   SCOTT M. MALZAHN
               Attorneys at Law
6        515 South Flower Street, Suite 3500
         Los Angeles, California  90017
7        (424) 652-7800

8

9    **FOR THE DEFENDANTS:**

10       ZHMAD, ZAVITSANOS & MENSING, PC
         BY:   FOSTER C. JOHNSON
11       BY:   SHAHMEER A. HALEPOTA
         BY:   WEINING BAI
12             Attorneys at Law
         1221 McKinney Street, Suite 2500
13       Houston, Texas  77010
         (713) 655-1101

14
         GLANCY, PRONGAY & MURRAY, LLP
15       BY:   KEVIN R. RUF
               Attorney at Law
16       1925 Century Park East, Suite 2100
         Los Angeles, California  90067
17       (310) 201-9160

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

1        TUESDAY, MAY 17, 2022; 10:33 A.M.

2            LOS ANGELES, CALIFORNIA

3                    -oOo-

4            THE COURTROOM DEPUTY:  Calling Item No. 1, Civil

10:33AM   5    Case 20-3503, International Medical Devices, Inc., et al.,

6    versus Robert Cornell.

7            Counsel, state your appearance at the lectern.

8            MR. BAKER:  Good morning, Your Honor.  Ryan Baker on

9    behalf of the plaintiffs.

10:33AM  10            THE COURT:  Good morning.

11            MR. MALZAHN:  Good morning, Your Honor.

12    Scott Malzahn on behalf of the plaintiffs.

13            THE COURT:  Good morning.

14            MR. JOHNSON:  Good morning, Your Honor.

10:34AM  15    Foster Johnson, Shahmeer Halepota, Weining Bai, and my

16    co-counsel Kevin Ruf on behalf of the defendant.

17            THE COURT:  Good morning.

18            So for this case and for this morning's hearing, I

19    am unmasked as well as the other members of the staff, except

10:34AM  20    the law clerk.  And so, therefore, you may be unmasked as well.

21    But if anyone feels more comfortable wearing your mask, please

22    feel free to wear it.

23            So the matter before the Court this morning is the

24    order to show cause why the defendant should not be held in

10:35AM  25    civil contempt for violating the Court's preliminary

injunction.  And so the parties have briefed the issues as a result of that order to show cause, and those have been read. And the Court will listen to further oral argument on that matter this morning.

10:35AM     But I did want to address, the courtroom deputy has indicated on the calendar -- and so if you have a copy of the calendar, you've noticed this -- that there are pending supplemental ex parte applications that need a ruling.

     I think most of them pertain to the summary judgment

10:36AM motion.  And within that motion, there are motions to strike reports and opinions and there's a motion to withdraw.

     But I think all of those pertain to the summary judgment.  So when the Court issues the order on the summary judgment motion, all of those motions will be addressed.

10:36AM     I know that you're curious, when does the Court expect to give you that order.  So I spoke with my law clerk who's working on the matter just before we came out.  And so I think about three weeks from today's date you should have the benefit of a written order from the Court on the summary

10:36AM judgment motion as well as those motions that are a part of the summary judgment.

     This morning I did sign a stipulation continuing certain dates.  And so I've given that to the courtroom deputy, so that will get filed.

10:37AM     My memory is that the next date, there is a hearing

and then there is the pretrial conference.  And so what we're attempting to do is to get you the written order on the summary judgment motion and all of those other motions that are part of the summary judgment in sufficient time for you to meet and confer, prepare the memorandum of contentions of fact and law, and prepare the pretrial conference order.

Also, for today's hearing there are a number of requests to file things under seal.  And the courtroom deputy has indicated that, when that request is made, the document that is the subject of that request is sealed until the Court actually rules on the motion.  In other words, it's not made public.

If the Court denies the motion to seal, then it becomes a public document.  If the Court grants the motion, then it remains under seal.

There is a local rule that addresses under seal filings.  And I think the parties are familiar.  It's Local Rule 79-5.2.2.  And the rule addresses whether the document that you're seeking to seal is something that was provided to you by the other side pursuant to a protective order.  And if that is the case, then often the party who is offering now that document for purposes of a motion is complying with the protective order and says it should be under seal because of a protective order.

Well, you can't just rely upon the protective order.

1       There has to be either a statute or a case law or something

2       else that addresses being under seal.  And what you're

3       balancing is the public access versus privacy.

4              So there are not a lot of things that are filed

10:39AM  5    under seal or that the Court accepts for filing under seal

6       because, if we do that balancing, what generally outweighs the

7       privacy would be the public access to court proceedings.  So

8       it's not enough that the parties just agree, we think this

9       should be under seal.

10:40AM 10      The thing that you need to keep in mind as well is

11      that, at some point, this is all going to become public.  If

12      you don't settle this case, then much of what you may be

13      talking about now, the file under seal, will be public.  It

14      will be used during trial, the courtroom is open to the public,

10:40AM 15    and anybody who comes in is listening and hearing, as well as

16      the jury, these matters that could be private.

17             But the rule also allows for redaction.  So there

18      are times that an entire document will not be placed under seal

19      but some portion of the document may be redacted for privacy

10:40AM 20    purposes.

21             And so the simple ones are, you know, health records

22      and Social Security numbers and addresses of individuals,

23      things like that that almost no one would disagree, that that's

24      private information and needs to be kept private.

10:41AM 25      When we get to the area of trademark, copyright,

1    patents, some of the intellectual property cases that we try,

2    then there may be tension as to what needs to be public and

3    what needs to be private.  But whoever is asking that it be

4    placed under seal needs to cite to the authority for sealing

10:41AM  5    it, something other than the protective order.

6            So to the extent that you haven't done that, then

7    the Court is likely to either give you an opportunity to take

8    back the document, comply with the local rule, or simply deny

9    the request to file it under seal.

10:42AM  10            Now, the Court, of course, has access to all of it.

11   So whether it's public or private, the Court has already

12   reviewed it and considered it in ruling on the motion that's

13   before the Court today.

14            But one of the questions that I would ask, to the

10:42AM  15   extent that defendants are asking to file under seal some

16   exhibits and if the reason for making the request is that

17   plaintiff provided them to you pursuant to the protective order

18   and so you're simply trying to comply with the protective

19   order.  But it may be that plaintiff does not feel that they

10:42AM  20   need to be placed under seal.  And if that were the case, then

21   the Court would deny that request and they would become public.

22            If the plaintiffs feel that the documents need to be

23   under seal, the plaintiff didn't offer them, defendants offered

24   them, then plaintiff may make a showing as to why they still

10:43AM  25   should be under seal, even for purposes of this motion that's

                    before the Court.

                             But it may be that plaintiff simply entered into the

                    protective order, everybody wants to comply with it, for your

                    eyes only in terms of providing you a document that -- during

10:43AM             the discovery phase.  But once you get to a public proceeding,

                    such as a hearing on motions or a trial, then the protective

                    order is not enough.

                             So that may be something that you want to address

                    this morning, these under seal requests, or if there's no

10:44AM             objection, if the plaintiff provided the exhibits or the

                    documents, then the Court would just simply deny that motion,

                    they'd become public.

                             So the exhibits that I'm talking about are attached

                    to a declaration, and they are numbered 3, 4, 5, 7, 8, 9, 10,

10:44AM             11, 16, 22, and 23.  So the defendants and the plaintiff, too,

                    can easily take a look at that and we may be able to resolve

                    that this morning.  If we can't, then the Court would let you

                    retrieve those documents and, if you feel that they need to be

                    under seal, then you would re-file them, complying with the

10:44AM             Court's local rule.

                             You may feel that you've already complied with that

                    rule.  So to the extent that you think you have, then that's

                    something that could be addressed this morning as well.

                             I also have a request from the defendants to file a

10:45AM             sur-reply.  And so the Court denied that request and said that

could be addressed orally at this hearing.  So that would be the starting place to give the defendants -- it came by way of an ex parte application, to let you address what you would have filed in the sur-reply had the Court allowed it.

10:45AM

So I'll let defendants be heard first on that.  And this does pertain to the order to show cause.

And since there are a number of counsel -- or at least more than one at each table, it would be helpful to have you state your name before you address the Court.

10:46AM

MR. JOHNSON:  May it please the Court, Your Honor, Foster Johnson for defendant.

Your Honor --

THE COURT:  And which defendant?

MR. JOHNSON:  For all defendants, Your Honor.

10:46AM

THE COURT:  All right.

MR. JOHNSON:  All right.  For Penuma to establish civil contempt, Your Honor, they bear the burden of showing that Augmenta violated the Court's order, not based on a good faith and reasonable interpretation of the order, by clear and convincing evidence.

10:46AM

You'll notice, if you look at the reply that was filed, that Penuma largely doesn't address this standard.  And there's a reason for that, which is that on these facts Penuma can't come anywhere close to their burden to show by clear and convincing evidence that Augmenta and Dr. Cornell did not have

10:46AM

1  a good faith and reasonable interpretation of the Court's

2  order.

3         Let me start with the facts that aren't disputed

4  here but which Penuma failed to address in either its motion or

10:47AM  5  its reply, and those facts are these.

6         After Your Honor granted an injunction, Penuma came

7  up with a scheme to try to block the FDA from providing

8  clearance to Augmenta's device.  And the scheme worked like

9  this.  Jonathan Elist, who is Penuma's CEO, ghost wrote a

10:47AM  10  citizen's petition to the FDA.  He also wrote a series of

11  defamatory letters also addressed to the FDA in which he

12  alleged that the features of the Augmenta were so

13  catastrophically dangerous that clearance had to be denied.

14         Mr. Elist then had multiple doctors who were

10:48AM  15  effectively in his paid control file these letters and the

16  citizen petition under their own names.  These doctors are

17  Dr. Lawrence Levine and Dr. Tajkarimi.

18         In violation of the FDA's own regulations,

19  Your Honor, these doctors did not disclose to the FDA that the

10:48AM  20  citizen's petition and these letters were actually being filed

21  on behalf of Augmenta's primary competitor, Penuma.

22         In violation of the FDA's own regulations,

23  Dr. Levine and Dr. Tajkarimi did not disclose that they both

24  have significant financial interest in Penuma.  And most

10:48AM  25  amazingly to me, these doctors didn't disclose to the FDA that

**UNITED STATES DISTRICT COURT**

the features they were telling the FDA were so catastrophically

dangerous that they should never be allowed to be placed in a

patient are the same features that they've been telling

Your Honor for the last two years are trade secrets that are

10:49AM    worth $15 million.

These doctors didn't stop there, though.

Dr. Levine, who contacted multiple FDA officials on behalf of

Penuma without disclosing that he was acting on Penuma's

behalf, concluded his letter to the FDA as following:

10:49AM    "I would implore the FDA to require the sponsor to

provide extensive safety data to prove this implant can be

placed and removed successfully.  These additional data are the

only way we in the field of urology could have confidence to

know that these products we are using are safe and effective

10:49AM    for their intended purpose."

That's what Penuma, through this doctor, told the

FDA.

Now, unfortunately for my client, the FDA took these

complaints that were filed seriously and the FDA issued a

10:50AM    second request for information in which my client Augmenta was

essentially told you need to come forward with evidence that

the mesh tabs and absorbable sutures that are featured in your

product are not dangerous, that they, in fact, can be implanted

in humans without catastrophic side effects.

10:50AM    And the FDA made clear, both orally and in their

1    request for information, that if my client Augmenta couldn't

2    satisfy the FDA about these complaints that Penuma had raised,

3    that Augmenta's FDA clearance would be denied.

4              Now, effectively what Penuma is arguing is that, by

10:50AM   5    their own actions, they've created a catch-22 for Augmenta.  If

6    Augmenta did not supply the FDA with convincing peer reviewed

7    clinical safety data that its product was safe, Augmenta's FDA

8    clearance would be denied.  But if Augmenta did provide peer

9    reviewed clinical safety data to the FDA sufficient to convince

10:51AM  10    the FDA that its product could be cleared, Augmenta, according

11    to Mr. Baker and Penuma, should be held in contempt.

12              Now, that's a facially unreasonable interpretation

13    of the Court's order, given these facts.  But it also ignores

14    that Your Honor created a carve-out in the order specifically

10:51AM  15    to avoid this kind of unfair result.

16              In your order, the Court expressly said, "The Court

17    is not ordering defendants to abandon their application or

18    preventing defendants from pursuing any pending 510

19    submission."

10:51AM  20              Now, as the Court is aware, the standard in the

21    Ninth Circuit, as the standard generally in all federal courts

22    that govern civil contempt proceedings, is the following:

23    "Injunctive orders are construed narrowly, and all omissions

24    and ambiguities in the order will be resolved in favor of the

10:52AM  25    enjoined party."

1      THE COURT:  And the case that you are relying on is

2  a case that's cited in the papers; correct?

3      MR. JOHNSON:  Correct, Your Honor.  That's *Advanced

4  Transit versus Ridge Corp.*, and the pin cite is in the papers.

10:52AM  5  I can provide it but --

6      THE COURT:  Not necessary.

7      MR. JOHNSON:  All right.

8      Now, Your Honor, both Dr. Cornell and Augmenta's

9  regulatory consultant, Mark Duval, provided declarations to the

10:52AM  10  Court in which they explained that in this situation that

11  Penuma had created where the FDA was now telling them prove to

12  us that these features are safe or we're going to deny your FDA

13  clearance, that the kind of safety data that the FDA finds to

14  be most convincing is peer reviewed clinical safety data.

10:52AM  15      And that would make sense because, as Dr. Cornell

16  and Mr. Duval explain in their declarations, peer reviewed

17  safety data means that some third party has objectively

18  verified that what you're saying is correct and true.  That's

19  what they did.

10:53AM  20      Their only recourse in this situation that Penuma

21  had created was to submit this data to the *Journal of Sexual*

22  *Medicine* so it could be reviewed by an objective third party.

23      They then use that to present evidence to the FDA

24  that their product not only is safe, not only is blessed by

10:53AM  25  clinical data, but that the most prestigious journal in the

1     United States of sexual medicine agrees that the clinical data

2     is sufficient to show that the concerns raised by Penuma with

3     the FDA were baseless.

4            Now, to show you just how incredibly disingenuous

10:53AM  5     this contempt motion is, in their reply papers, Penuma attached

6     a declaration from Allison Komiyama.  Ms. Komiyama is an FDA

7     regulatory consultant who works for Penuma.

8            Mrs. Komiyama claims in her declaration that it's

9     incredibly unusual for applicants to ever provide clinical

10:54AM  10    safety data to the FDA.  She also states that the only time

11    that applicants ever provide clinical safety data is when

12    they're ordered to by the FDA.  And she says that anytime

13    clinical safety data is provided, it's always provided

14    confidentially.

10:54AM  15          What Mrs. Komiyama left out of her declaration,

16    Your Honor -- and we would be happy to provide this evidence to

17    the Court -- is that in 2016 when Mrs. Komiyama was assisting

18    Penuma to seek FDA clearance of one of its devices, she

19    provided clinical safety data to the FDA and she did it

10:55AM  20    unprompted.  She was not ordered to do so.  And the clinical

21    safety data that she provided in an abstract was not provided

22    confidentially.  In fact, it's in the application that I pulled

23    down from the FDA's own website.

24          Now, to me, Mrs. Komiyama's declaration borders on

10:55AM  25    perjury.  But putting that aside, there is no clear and

convincing evidence that Dr. Cornell and Mr. Duval and Augmenta

unreasonably interpreted the Court's order when they decided

that the only way for them to seek FDA clearance was to provide

peer reviewed safety data.

10:55AM        And again, the standard, as set forth in the

Ninth Circuit, is that omissions and ambiguities -- in

Your Honor's order have to be construed in favor of Augmenta.

The order didn't say I'm going to allow you to pursue your FDA

application any way you see fit except by providing peer

10:56AM  reviewed safety data.  It doesn't say that.  It doesn't say I'm

going to allow you to pursue your 510 clearance any way you see

proper except don't publish in the *Journal of Sexual Medicine*.

        What it says is the Court's order will not prevent

you from seeking a 510 clearance.  Dr. Cornell and Augmenta and

10:56AM  Mr. Duval all reasonably took Your Honor at what the order

simply says.

        I'd make two last points, Your Honor.  My first

would be -- as Your Honor correctly observed back in February

at the summary judgment hearing, in a sense, the Court should

10:56AM  reach the summary judgment rulings first because, if the Court

finds, as we believe it should, that there aren't any trade

secrets --

        THE COURT:  First, before ruling on the order to

show cause, is that what you mean?

10:57AM        MR. JOHNSON:  Yes, Your Honor -- yes, Your Honor.

In the hearing, in the transcript, the Court -- what the Court observed -- I think -- I think correctly -- is that it made more sense for the Court to rule on the summary judgment motions before taking up the merits of the contempt proceeding for the obvious reason that, if there aren't any trade secrets in this case, this -- this proceeding is effectively moot.

The final point I would make is this.  Today's hearing is a proceeding in equity.  And as the Court is aware, a movant seeking equity has to come into the Court with clean hands.

The undisputed facts here establish that Penuma doesn't have clean hands.  Penuma intentionally misled the FDA about who was providing the citizen's petition.  Penuma intentionally misled the FDA about who had actually drafted these letters accusing Augmenta of being catastrophically terrible.  Penuma intentionally mislead the FDA when it didn't disclose that the doctors filing the citizen's petition and these letters have financial stakes in Penuma.

Effectively, Penuma created the problem that they're complaining about today.  They created a situation by filing these complaints that Augmenta had to respond to.  Their complaint to the FDA was there's no clinical safety data that shows that this device is safe.

Unsurprisingly, Augmenta was then put in the situation of having to provide the FDA with clinical safety

data.  And unsurprisingly, the most convincing kind of clinical

safety data for the FDA is peer reviewed safety data.

So having created this problem, I don't think they

have a basis to seek contempt.  I don't believe that my

10:59AM   client's interpretation of Your Honor's order was unreasonable.

And there's nothing approaching clear and convincing evidence

in the record that would suggest otherwise.

THE COURT:  So just one question by the Court.

Based upon your argument, was it necessary to do a published

10:59AM   article in order to receive that peer review that you've

addressed?

MR. JOHNSON:  Yes, Your Honor.  And both Dr. Cornell

and Mr. Duval in their declarations attest to that, and that is

not controverted.

10:59AM   THE COURT:  All right.

MR. JOHNSON:  Thank you, Your Honor.

THE COURT:  There may be one other item that I'd

like to have the defendants address and that is the relief

being requested in the -- in the event that the Court should

10:59AM   find a violation of the preliminary injunction.

Plaintiffs have made a request as to the relief.

And I don't think defendants have addressed that.  I don't know

if you will be the one addressing it or one of your other

colleagues but --

11:00AM   MR. JOHNSON:  Your Honor, I would be happy to --

1        THE COURT:  Okay.  And if you feel like you've

2   already addressed it, just identify where that is and the Court

3   can simply review that.

4        MR. JOHNSON:  I'm first going to point out to the

11:00AM  5   Court where at a high level we had previously addressed the

6   relief that Penuma is seeking, and then I'm going to make some

7   points that address the reply.

8        So, Your Honor, at a high level, we did, in fact,

9   address the relief that Penuma is seeking in our original

11:00AM  10   opposition.  And at a high level, the relief they're requesting

11   is simply improper under Ninth Circuit precedent since none of

12   it really has anything to do with the publication of the

13   article and none of the very extravagant requests are supported

14   like case law, which generally requires that the Court impose

11:01AM  15   the most minimum sanction possible to ensure compliance and

16   that whatever sanction is imposed can be purged.  None of the

17   relief they're requesting can be purged, something they don't

18   even address in their reply.

19        Now, in their reply, they did radically narrow the

11:01AM  20   kind of relief that they're requesting.  But the most telling

21   thing about the reply is this, Your Honor.  The relief that a

22   movant would normally request is to -- is to stop the alleged

23   violation, which in this case would be pull the article down.

24        You'll notice, if you look at the reply, they don't

11:01AM  25   even ask for that.  That's because this contempt --

**UNITED STATES DISTRICT COURT**

```
1            THE COURT:  The Court understood that what they were

2    asking for is a monetary sanction per day until the article is

3    pulled or de-published.  Do you disagree?

4            MR. JOHNSON:  I didn't -- I didn't read their reply

5    as requesting that, Your Honor.  But I would -- I would agree

6    that if the Court found that Augmenta was in contempt, that the

7    appropriate remedy would be a daily fine until the article had

8    been pulled down and an award of attorneys' fees for bringing

9    the motion.  But that in the main is not the relief that they

10   really have been requesting because this motion has nothing to

11   do with the publication of the article.

12            They've never alleged any harm from the publication

13   of this article, Your Honor.  Telling -- they don't submit any

14   declarations from a single patient or a single doctor that

15   anybody's even read or seen this article.  They had an ongoing

16   duty to supplement discovery in this situation, Your Honor.

17   And yet eight months after the article was published, they

18   hadn't produced a single piece of paper showing that they've

19   been damaged in any way.

20            This entire contempt proceeding is simply about

21   their deficient expert reports.  They are quite aware that

22   their damages report is going to be excluded because their

23   damages expert didn't bother to apportion when he looked at the

24   trade secrets.  And automatically that report can't come in.

25   And their whole case is going to go down.
```

1        THE COURT:  And that's one of the motions that's a

2   part of the summary judgment motion?

3        MR. JOHNSON:  It's -- it's part of the *Daubert*

4   hearing, Your Honor, that I believe --

11:03AM    5        THE COURT:  But is that related to the summary

6   judgment motion?

7        MR. JOHNSON:  My -- my co-counsel over here is

8   waving at me.

9        THE COURT:  I can see that.  He's saying it's not

11:03AM   10   related.

11        MR. JOHNSON:  Telling me, I guess, that it's not --

12   it's not related.

13        THE COURT:  So before we part today, someone on the

14   defense team then may want to identify what's related to the

11:03AM   15   summary judgment and what's not related to the summary

16   judgment.  I assume that all of these motions to strike certain

17   reports or opinions, whether you call it a *Daubert* motion or

18   not, that it was related to the summary judgment.

19        So if that's not the case, then counsel may want to

11:04AM   20   identify which of those motions is not related to the summary

21   judgment.  And you don't have to address that since you're not

22   the one that's waving your hand saying no.  But that should be

23   addressed so it would be clear to the Court.

24        Anything else that you wish to put on the record

11:04AM   25   concerning the sur-reply or the relief requested by the

plaintiff?

          MR. JOHNSON:  Nothing further, Your Honor, except --

          THE COURT:  All right.

          MR. JOHNSON:  -- that we would request permission to
enter a copy of the FDA application that Mrs. Komiyama
submitted on behalf of Penuma back in 2016 that I was referring
to.  We couldn't do that in our original opposition because the
declaration that I'm talking about was attached to their reply,
meaning that I had no chance to address it in my opposition.
And I would request that that application be put into the
record.

          THE COURT:  All right.  So what is attached to the
reply that you are now requesting to provide something else?
Could you identify that?

          MR. JOHNSON:  Yes.

          THE COURT:  It is true that the party who files the
last briefing in this case, it may have been the plaintiff, if
the plaintiff attaches something in that brief or to that
brief, that the other side in this case, defendants, may not
have had an opportunity to respond to, this would be the
appropriate place to raise it.

          So would counsel identify what it is that the
plaintiff attached to its reply that you feel that you now need
to provide some additional evidence to the Court?

          MR. JOHNSON:  With the Court's permission, I'm going

1    to ask Mr. Bai to address that for Your Honor.

2           THE COURT:  All right.  And just state your name for

3    the record.

4           MR. BAI:  Thank you, Your Honor.  Weining Bai for

5    all of the defendants at issue today.

6           THE COURT:  The two defendants.

7           MR. BAI:  Yes, ma'am.

8           THE COURT:  Okay.  Now, what is it that the

9    plaintiffs provided to the Court in its reply -- that's what

10   I'm understanding counsel to have said -- that results in your

11   now requesting permission to provide something else?  So set

12   the stage for me.

13          MR. BAI:  Yes, Your Honor.  Um, so in the -- um, in

14   their reply in support of their motion for contempt or order to

15   show cause, the plaintiffs obviously attached a declaration and

16   other evidence addressing the points that we made in our

17   response that we filed after Your Honor issued a show cause

18   order.

19          Um, and so because Ms. Komiyama issued a

20   declaration, there were evidence that they submitted in their

21   reply.  We -- we had requested a sur-reply to file evidence to

22   address that.

23          Now, just to clarify one quick issue, the actual

24   exhibit that Mr. Johnson is talking about was actually

25   Exhibit 24 to our original response.  It's just that we didn't

```
  1   really get an opportunity to articulate that in terms of

  2   argument of how it addresses.  And the issue being --

  3            THE COURT:  And so what the Court should

  4   understand -- the Court already has the exhibit.  It's

  5   Exhibit 24.  It was in your response.

  6            MR. BAI:  Yes, ma'am.  That's what I --

  7            THE COURT:  It's just that -- and so I would have

  8   expected this to be a part of that sur-reply oral argument.

  9            So I guess what you're saying is that counsel didn't

 10   address that in his response and you wish to address it now.

 11   Is that what the Court should understand, that it's a part of

 12   you would have addressed it in a sur-reply had the Court

 13   permitted you to file a sur-reply but, instead, the Court said

 14   you may address it orally and that's what you're seeking to do

 15   now?

 16            MR. BAI:  Well, actually, that's basically correct,

 17   Your Honor, with one clarification.  Mr. Johnson had already

 18   addressed it.  It's just that he -- it's the argument of how

 19   the document at issue shows that Ms. Komiyama's position that

 20   she took, the position being that you don't submit clinical

 21   data unless you're ordered to do so and, when you do, you do it

 22   confidentially.  The fact that IMD, the plaintiff, who makes

 23   the Penuma product, did the exact opposite of what Ms. Komiyama

 24   says would be normally done, that point Mr. Johnson already

 25   made.
```

11:07AM (line 5)
11:08AM (line 10)
11:08AM (line 15)
11:08AM (line 20)
11:08AM (line 25)

1              THE COURT:  Okay.  So what is it that the Court has

2        not heard or does not know that you think is important?

3              MR. BAI:  The argument has been made that --

4              THE COURT:  Oh.  Oh.

11:09AM  5              MR. BAI:  I wanted to clarify that the exhibit that

6        I think Mr. Johnson was asking to enter, it's just that we were

7        not able to sort of pair that together as a sur-reply and an

8        exhibit, but you do have the document, Your Honor.

9              THE COURT:  And that's Exhibit 24 attached to your

11:09AM 10       response.

11              MR. BAI:  Yes, ma'am.

12              THE COURT:  Okay.  Thank you.

13              MR. BAI:  Yes.

14              And I'm happy to address the issue of which of the

11:09AM 15       motions to exclude expert testimony is independent of the

16       relief sought by our summary judgment motion while I'm up here.

17              THE COURT:  Okay.  If there are any, I have a list,

18       it does appear on the calendar.  Plaintiffs' -- the summary

19       judgment motion, motion to strike an expert report of Mr. Arst,

11:09AM 20       A-r-s-t; a motion to strike the expert report of Mr. Drewry,

21       D-r-e-w-r-y; a motion to strike opinion No. 2 of Dr. Carson

22       with memorandum of points and authorities in support; a motion

23       to strike plaintiffs' untimely supplemental expert reports; a

24       motion to strike expert report -- and this, again, is the same

11:10AM 25       individual -- Mr. Arst, A-r-s-t; and then a motion to withdraw

```
  1   a docket entry; plaintiffs' motion to exclude certain opinions

  2   of defendants' rebuttal damage expert is Dr. Hatch, H-a-t-c-h;

  3   and then plaintiffs' Daubert motion to exclude the testimony of

  4   defendants' expert, Dr. Mulcahy, M-u-l-c-a-h-y or b-y.

  5            So that's the list of what I have.  Is it one of

  6   those or some of those that you are suggesting are independent

  7   of the summary judgment motion?

  8            MR. BAI:  Your Honor, um, so --

  9            THE COURT:  And if it's not one of those, maybe it's

 10   just not listed and -- but it's still a motion that the Court

 11   should understand has nothing to do with the summary judgment

 12   motion.  Because the Court thought otherwise, that all of these

 13   were related to the summary judgment.

 14            MR. BAI:  Effectively, everything Your Honor just

 15   read is actually independent of the summary judgment motion,

 16   with the exception --

 17            THE COURT:  So then why were these motions filed at

 18   the same time or about the time of the summary judgment?

 19   Because what's really before the Court is the summary judgment

 20   motion.  And then various parties may ask if this evidence is

 21   offered as a part of summary judgment, then we're asking the

 22   Court not to consider it, to strike it for various reasons or

 23   it could be in the form of a Daubert motion.

 24            So generally these motions just don't stand by

 25   themselves.  So I'm not understanding your position that some
```

**UNITED STATES DISTRICT COURT**

1  of these that the Court identified -- or maybe the Court didn't

2  identify them, but they are motions but they are independent of

3  the summary judgment.

4  MR. BAI:  We do not believe that the summary -- that

11:12AM  5  a ruling on any of these pending *Daubert* motions, with the

6  exception --

7  THE COURT:  Well, only one that I read is labeled as

8  "*Daubert*."  Now, you may feel that there are some other *Daubert*

9  motions that the Court hasn't listed, but it would be helpful

11:12AM  10  to the Court to know.  If they're not related to the summary

11  judgment, are they just motions in limine that you're

12  requesting the Court to rule on before the pretrial conference?

13  MR. BAI:  No, Your Honor.  They're all *Daubert*

14  motions with the exception of the one motion to exclude the

11:13AM  15  untimely expert -- supplemental expert report of Dr. Carson and

16  Mr. Drewry.  The remaining five motions at issue that are

17  filed, three by us and two by the plaintiffs, are all *Daubert*

18  motions.

19  THE COURT:  Are they labeled as *Daubert* motions?

11:13AM  20  MR. BAI:  I believe --

21  THE COURT:  Because if they aren't labeled that way,

22  then the Court would not think of them as being *Daubert*

23  motions.  And this may be something that we can straighten out

24  before you leave.  The Court just simply wants to know --

11:13AM  25  MR. BAI:  Yes.

1          THE COURT:  -- are there outstanding motions,

2    whether they're labeled as *Daubert* or not, motions to strike

3    reports, opinions, something of that cite, for whatever reason,

4    that are not related to the summary judgment motion?  They're

11:14AM    5    just motions that someone filed, asking the Court to rule on

6    them, but it's not necessary to have that ruling before the

7    Court rules on the summary judgment.

8          MR. BAI:  Your Honor, we do not believe it is

9    necessary to have a ruling on any of the pending motions to

11:14AM   10    exclude experts, with the exception of the motion to exclude

11    the untimely supplemental opinion of Dr. Carson and Mr. Drewry.

12    All -- the remaining motions --

13          THE COURT:  Okay.  So then why were these other

14    motions filed, just so that the Court would rule on them at

11:14AM   15    some point so that the parties would have the benefit of that

16    ruling as you prepared for trial?

17          MR. BAI:  Yes.  Yes, Your Honor.

18          THE COURT:  Okay.

19          MR. BAI:  So we believe that -- so there's a

11:14AM   20    procedural reason and a substantive one and I'll take them one

21    at a time.

22          Procedurally back in the fall we just ran up -- I

23    think just through no fault of either side, there were

24    discovery disputes, trying to finish up fact discovery and

11:15AM   25    expert discovery.  We just ran up the clock against the

existing deadlines at the time so that the parties agreed

amongst themselves by stipulation to set the deadlines for

filing summary judgments and *Daubert*s very close to each other,

but it was never intended that the Court had to rule on a

11:15AM  particular *Daubert* motion in order to grant summary judgment.

The *Daubert* motions, as Your Honor's aware, would take those

opinions out for the purposes of trial.  The -- our summary

judgment motions are rather independent.

So, for example, we have a motion to exclude the

11:15AM  damage model and the damage expert testimony of plaintiffs'

expert, Mr. Arst.  That would go to the trade secret

misappropriation claim.  He had a reasonable royalty damages

model for trade secret misappropriation.

But our -- but our actual summary judgment motion on

11:15AM  their trade secret claim does not go to damages.  It goes to

liability.  It goes to whether or not the trade secrets are a

secret as a matter of law and our argument being that they're

not because they're published in published patents and patent

applications.

11:16AM  THE COURT:  Okay.  So maybe the easy way to resolve

this is the parties could stipulate before you leave today

which of the motions, whether they're *Daubert* motions or

motions to strike, whatever the reasons are for them, that are

not related to the summary judgment and then the Court would

11:16AM  not consider those as the Court rules on the summary judgment

motion.

I think you've identified two that you believe are related to the summary judgment.  So could you state what those two are again, please?

11:16AM    MR. BAI:  Actually, Your Honor, just one.

THE COURT:  Okay.  And which one is that?

MR. BAI:  There's the motion to exclude the untimely supplemental expert reports --

THE COURT:  Okay.

11:17AM    MR. BAI:  -- of Dr. Carson and Mr. --

THE COURT:  It's called a motion to strike or at least that's the way it's listed.  Motion to strike plaintiffs' untimely supplemental expert reports.  And I assume in that motion you've identified the specific reports that you think

11:17AM    are untimely.

MR. BAI:  Yes, Your Honor.  They're attached -- they would be attached as exhibits.

THE COURT:  Okay.  And so that is not related to the summary judgment.

11:17AM    MR. BAI:  No, Your Honor.  That is the one that is.

THE COURT:  Is related.

MR. BAI:  The remaining *Daubert* motions do not -- are not necessary to resolve any of the pending summary judgment arguments by either side.

11:17AM    THE COURT:  All right.  And so I'll see if

```
 1   plaintiffs agree with you on that.  And then that would be
 2   helpful to the Court because I will not be trying to consider
 3   those in ruling on the summary judgment.
 4          Anything else that you wish to address on this
 5   point?
 6          MR. BAI:  Sure.  Um, just a quick clarification that
 7   the -- and the reason that we set it up this way is in the
 8   stipulation that I believe Your Honor just entered, we have
 9   actually asked for a separate hearing on June 14th to address
10   those Daubert motions whose decisions would not sway the --
11   motions to exclude experts.  I'll put it that way because I
12   understand we did -- we respectively did a poor job labeling.
13          So those motions that would not impact the summary
14   judgment ruling, we sought a hearing on June 14th to address
15   those before the pretrial conference.  And that is in
16   Document 39 -- I'm sorry, 439, excuse me, on page --
17          THE COURT:  And I did sign that this morning, but I
18   did not focus on the individual motions that -- but focused
19   more on the fact that you were asking for a hearing on a
20   specific date and I think I signed off on that.
21          But it would be helpful, then, if the parties could,
22   before you leave today, maybe just a short meet and confer
23   among yourselves identifying other outstanding motions.  And if
24   you're in agreement that these don't relate to the summary
25   judgment motion, they're just independent motions that we
```

1   filed, that's helpful to the Court to prepare for that hearing

2   that's coming up in June.

3           MR. BAI:  Thank you, Your Honor.  We're -- we're

4   happy to do that --

11:19AM 5           THE COURT:  Okay.

6           MR. BAI:  -- before we leave and let the Court and

7   the clerk know.

8           THE COURT:  Okay.  Thank you.

9           MR. BAI:  Thank you.

11:19AM 10          THE COURT:  All right.  Could I hear from

11  plaintiffs?  This is in response to defendants' oral argument

12  this morning that relates to what they would have included in a

13  written sur-reply had the Court permitted, as well as the other

14  issue that I ask be addressed, which was the relief requested.

11:20AM 15  And then if you can shed any light before a meet and confer to

16  identify these other motions that are pending that are related

17  or not related to summary judgment.

18          MR. MALZAHN:  Yes, Your Honor.

19          THE COURT:  And plaintiffs' counsel for the record,

11:20AM 20  please.  Name?

21          MR. MALZAHN:  This is Scott Malzahn on behalf of the

22  plaintiffs.  I'll address each of those issues that Your Honor

23  just raised first.

24          THE COURT:  All right.  Thank you.

11:20AM 25          MR. MALZAHN:  Then if you'd like to entertain

further argument, we're happy to go there as well.

As I understand it, the first question that Your Honor just raised had to do with the Komiyama declaration. And, you know, I think it's important to put some of this in context because they -- the defense counsel here has made a very strong claim that Ms. Komiyama's declaration borders on perjurious. And that's nothing of the sort. The facts just don't support this.

Ms. Komiyama's declaration was originally filed many months ago on December 7th, 2021. That's Docket No. 401-1. The defense has had plenty of time to file any additional evidence that they needed in connection with Ms. Komiyama's declaration. So I don't think there's any need for new evidence to be submitted.

And as I understand it now, defense counsel isn't claiming that they need to submit new evidence.

THE COURT:  Right.  The Court understands that -- the Court already has it, it's Exhibit 24, it's a part of the response filed by the defendants to the order to show cause. And what they were addressing this morning was just an opportunity to address in a sur-reply, had the Court permitted it, but it's being done orally here and I think they've done that.

So I don't understand now that they're asking to provide any additional evidence.  I did think that was the case

                 1    at first, but I think they've clarified that now.

                 2            MR. MALZAHN:  Yeah, I think we're all on the same

                 3    page there procedurally at the moment.

                 4            But let me comment on the substance of the claim

11:22AM          5    that they're making, um, because they suggest that somehow

                 6    Exhibit 24 demonstrates that her declaration is perjurious and

                 7    it doesn't do that at all.

                 8            If you look at Exhibit 24, all it shows is that that

                 9    clinical data was submitted directly to the FDA in this

11:22AM         10    particular instance.  It doesn't show that Ms. Komiyama or IMD

                11    published some article in a public medical journal and then

                12    submitted the journal to the FDA for its consideration.

                13            And Ms. Komiyama explains in her declaration the

                14    normal procedures, that the FDA wants to see the actual

11:23AM         15    clinical data because they want to do their own assessment of

                16    that data and make their own independent determinations.

                17    That's what we rely on the FDA to do.

                18            Um, you know, and so Ms. Komiyama's declaration

                19    doesn't contain any perjurious comments or statements.  They

11:23AM         20    certainly haven't demonstrated that anything she said was

                21    false.

                22            If you look at the declaration that was submitted by

                23    their own witness, Mark Duval, he doesn't testify that

                24    publication of an article is part of the FDA process when

11:23AM         25    submitting -- when submitting 510 clearance requests.  He

1    doesn't say that at all.  He just -- in his opinion, all he

2    says is that he thinks it might be helpful in this instance to

3    the FDA.

4              And so, in essence, the defendants took it upon

5    themselves to publish an article in a medical journal that's

6    going to be read by clinicians, that's going to be read by

7    physicians, that may be read by members of the public who are

8    potential customers of the -- of Penuma or Augmenta implants.

9              So the defendants really here made a conscious,

10   deliberate decision to violate this Court's order, to put

11   plaintiffs' alleged trade secrets into the public realm, to

12   market and promote their product.

13             And, you know, the plaintiffs -- the defense here

14   wants to, you know, throw dirt, essentially, and claim that we

15   somehow made it necessary for them to do that.  There's no

16   evidence of that, Your Honor.  If they wanted to demonstrate to

17   the FDA that they should be able to obtain clearance, they

18   could have submitted the data directly to the FDA through a

19   confidential process.  They didn't need to violate this Court's

20   order.

21             And they had plenty of time to think about that.  If

22   they wanted to seek clarification from this Court as to what,

23   you know, this Court's order meant, they could have filed a

24   motion for clarification or for modification of the injunction

25   and presented additional facts to support their claim that

1    somehow now it was necessary for them to do this.

2         They didn't do any of that.  They exercised

3    self-help and went ahead, despite the clear wording of this

4    Court's injunction, and submitted an article to a public

11:25AM   5    medical journal that they knew was going to be reviewed, not by

6    the FDA but by, you know, readers of that publication.

7         And, you know, since this article was put out into

8    the public realm, you know, my client has seen social media

9    posts on Reddit forums about the article by potential --

11:26AM   10         MR. JOHNSON:  Your Honor --

11         MR. MALZAHN:  -- potential patients.

12         MR. JOHNSON:  -- I have to object to Mr. Malzahn

13    testifying about evidence that's not --

14         THE COURT:  So if it's outside the record that the

11:26AM   15    Court has, then it should not be addressed here.

16         MR. MALZAHN:  It is outside of the record.

17         THE COURT:  All right.

18         MR. MALZAHN:  This recently came to our attention.

19         THE COURT:  The Court would sustain the objection.

11:26AM   20         MR. MALZAHN:  I understand, Your Honor.

21         One of the -- one of the remedies that we're seeking

22    here, Your Honor, is the opportunity to conduct discovery.

23         THE COURT:  No, and I understand that.  So depending

24    upon -- and maybe it's not dependent -- but the Court

11:26AM   25    understood that, depending upon the Court's ruling on the order

to show cause, that the plaintiffs may be asking for additional

discovery.  And so you've identified that and described it in

the motion.  And so the Court will actually address that in its

ruling.

11:26AM            MR. MALZAHN:  Thank you, Your Honor.

THE COURT:  Because if the Court does not find the

contempt, then additional discovery isn't needed.  Correct?

MR. MALZAHN:  That's right.  If there's no violation

of -- of your Court's order, then --

11:27AM            THE COURT:  Yes.  So I understand that; that if the

Court does find a violation, then you are asking for an

opportunity to conduct some additional discovery.

MR. MALZAHN:  Right.  Exactly.  We'd like to find

out what they've said to their publisher, what they've said to

11:27AM    third parties about it.

THE COURT:  And the Court understands that.

So any further comments, though, that you wish to

make based on the oral presentation made by the defense?

MR. MALZAHN:  Well, to the extent there is any

11:27AM    confusion about the remedies that we are seeking, we are

seeking a retraction of the article.  That's what we originally

had requested in our papers.  We don't withdraw that request.

We think it's certainly -- you know, if there was a

violation of the injunction, they should take all possible

11:27AM    steps to cure that wrong and they haven't done it.  They

haven't submitted evidence to this Court demonstrating what

steps they've taken to try to get the article pulled.

And at this point, the article's been posted in

multiple different forums.  It's not just on, you know, the

11:28AM  *Journal of Science -- Sexual Medicine*, but it's also in other

locations as well.  And they should be ordered to take all

steps possible and, you know, request that the publishers

remove those documents as well.  And a monetary sanction is

appropriate under these circumstances until they do that.

11:28AM  Um, they've had plenty of time since we originally

brought this issue to the attention of the Court in November of

last year to do that.  And they just haven't.

So I think it's -- you know, to address one of the

other issues that, you know, Your Honor raised, you had asked

11:28AM  if this is all moot if the Court rules in their favor on some

issue with the summary adjudication motions that are pending.

THE COURT:  Oh, I don't think I asked that question.

MR. MALZAHN:  Okay.  Well, I think it's been

suggested by the other side that it's moot and it's not.  You

11:29AM  know, this Court had entered a preliminary --

THE COURT:  I think it's independent.

MR. MALZAHN:  Yes.

THE COURT:  It's a motion that the Court needs to

rule upon, as well as the summary judgment.

11:29AM  MR. MALZAHN:  Okay.  So, you know, I think we've

briefed the issues.  If Your Honor has any other specific

questions, I'm happy to address those.

               THE COURT:  No, I don't.  What I would like to do is

to let the parties meet and confer, though, off the record to

11:29AM    see if you can identify these additional items that the Court

thought were related to the summary judgment motion.  They've

been labeled motions to strike.  One is a motion to withdraw a

docket entry, one is plaintiffs' motion to exclude, and one is

plaintiffs' *Daubert* motion.

11:30AM         So whether you intended all of those to be *Daubert*

motions or not, the Court would rule on them as you have

described them.  But what the Court is interested in knowing,

which of them, if any or all, relate to the summary judgment

motion.

11:30AM         MR. MALZAHN:  We're happy to --

               THE COURT:  So do you need time to discuss that

briefly?  And then it may be a stipulation for the record and

then -- it just gives the Court guidance.

               MR. BAKER:  Your Honor, may I ask a question for

11:30AM    clarification?

               THE COURT:  Sure.

               MR. BAKER:  This is Ryan Baker for the plaintiffs.

               I think some of my confusion on this is all of these

motions are related.  But is the Court asking whether or not

11:30AM    it's necessary to rule on some of these because they are going

39

```
    1    to, in fact, dispose of or change the shape of the summary
    2    judgment?
    3              THE COURT:  Yes.  That's exactly what I'm asking.
    4    Is it your expectation that when the Court issues its ruling on
11:31AM  5    summary judgment, the Court will either include in that order
    6    or in a separate order a ruling on all of these motions?
    7              MR. BAKER:  And I think, just to put a little bit
    8    more context --
    9              THE COURT:  Well, why don't we do this.  I'm
11:31AM 10    suggesting that you just take a moment to meet and confer.
   11              MR. BAKER:  That's fine.
   12              THE COURT:  And you may want to identify for the
   13    Court -- so if it's independent of the summary judgment motion,
   14    in other words, the Court can rule on the summary judgment
11:31AM 15    without addressing these, that's what I mean by "independent,"
   16    then you may identify which of them are.  The Court will then
   17    just focus on the summary judgment motion, the evidence offered
   18    by both sides.  If there are underlying motions related
   19    thereto, then the Court would issue a ruling on those as well
11:32AM 20    as a part of the summary judgment.
   21              So hopefully that's clear.
   22              MR. BAKER:  One additional issue I think that maybe
   23    also muddies the water.
   24              THE COURT:  So you don't have to bend over, why
11:32AM 25    don't you go to the lectern.
```

```
 1              MR. BAKER:  Thank you, Your Honor.
 2              One additional issue that I think may be muddying
 3    the waters a little bit here is there were also a series of
 4    objections, some of which were parallel or made similar --
 5              THE COURT:  Objections to what?  To evidence offered
 6    in support or in opposition to the summary judgment?
 7              MR. BAKER:  That's right, Your Honor.
 8              THE COURT:  Now, those are different.
 9              MR. BAKER:  Well, Your Honor had issued a series of
10    tentatives on -- I think it was 20-some objections.
11              THE COURT:  Yes.
12              MR. BAKER:  So some of the motions that are pending,
13    in fact, track those objections that are simply, you know,
14    maybe a 20-page brief that repeats a lot of the same arguments.
15    So I guess we'll meet and confer --
16              THE COURT:  So that may not be as simple as the
17    Court thinks.
18              So meet and confer first, though.  At least if you
19    can identify something that was labeled as a motion, not
20    objections to, then at least I'll have that.  I can look at
21    those tentative objections, ruling on objections, which was a
22    tentative ruling, and make some comparison.
23              MR. BAKER:  Thank you, Your Honor.
24              THE COURT:  All right.  So is this a good time for
25    me to give you time to meet and confer on this topic?
```

**UNITED STATES DISTRICT COURT**

1    MR. JOHNSON:  Your Honor, with the Court's

2    permission, could I just have three minutes to address a couple

3    of things?

4    THE COURT:  Well, normally I wouldn't give you any

11:33AM   5    other -- any additional time because I've given you time to

6    address what you would have put in a sur-reply.  And

7    plaintiffs -- if I had allowed the sur-reply, I would have

8    allowed plaintiffs to respond to it.  That's why I didn't allow

9    it.  I thought it was easier to do orally here.  And plaintiffs

11:33AM   10    have responded.

11    So I -- normally I wouldn't allow you further time.

12    But if you feel there's something that you didn't explain

13    clearly or that plaintiff has said something that you need to

14    make clear on the record, then if it's only going to take three

11:34AM   15    minutes, let's give it a try.

16    MR. JOHNSON:  Thank you, Your Honor.  I'll be brief.

17    THE COURT:  Because, you know, plaintiff gets the

18    final word on this.  So every time I hear from the defendants,

19    then I'm going to ask plaintiff anything else?  So it has to

11:34AM   20    stop somewhere.

21    MR. JOHNSON:  Only fair.  So just two points, then,

22    Your Honor.

23    Mr. Malzahn essentially got up and said that every

24    single thing in Mrs. Komiyama's declaration was true.  But one

11:34AM   25    of the things Mrs. Komiyama told the Court was that applicants

never submit clinical data to the FDA unless they're ordered to do so.  As Mr. Malzahn just pointed out, Mrs. Komiyama submitted clinical data to the FDA.

THE COURT:  And I think you've already said --

MR. JOHNSON:  Right.  Not being ordered to.  And so my point is it's just not correct that every statement in her declaration is true.

The second thing I would just point out to the Court is that Mr. Malzahn also said that Mr. Duval, Augmenta's regulatory consultant with the FDA, didn't say anything in his declaration about the necessity or the benefit of providing peer reviewed studies in support of FDA clearance.  That's also incorrect.

And I would just point the Court to paragraphs 6 and 7 of Mr. Duval's declaration in which he explains that that's a common practice and it is something that the FDA looks on with favor.  Those are the only two points I wanted to add for the record.

THE COURT:  And remember, the Court has these declarations.  And as you know, the Court must read them to rule on the matter that's pending before the Court.  So to the extent that counsel say something orally and the Court doesn't find it in the declaration, I would -- I would say that and know that.

And the Court often will have the benefit of a draft

```
          1    even of the transcript.  So if the Court is not remembering

          2    something that was said or whether it was said orally, then the

          3    Court has the benefit of that.

          4               MR. JOHNSON:  Your Honor, I appreciate the

11:36AM   5    opportunity to address the Court.  And I will -- I will keep in

          6    mind your admonition in the future about what I do and do not

          7    need to address.  Thank you, Your Honor.

          8               THE COURT:  Thank you.

          9               Does plaintiffs' counsel wish to have that final

11:36AM  10    word?

         11               MR. MALZAHN:  Yes, Your Honor.  Thank you.

         12               THE COURT:  Just on these comments made by defense

         13    counsel.

         14               MR. MALZAHN:  Thank you.  I'll keep this very brief,

11:36AM  15    Your Honor, because, you know, first, on Ms. Komiyama's

         16    declaration, you're absolutely right, there's -- what defense

         17    counsel represented is not contained in her declaration.

         18               THE COURT:  And it speaks for itself, and so the

         19    Court has the benefit of it.

11:36AM  20               MR. MALZAHN:  Correct.

         21               I think her -- the relevant statement is in

         22    paragraph 8, for your reference.

         23               THE COURT:  All right.

         24               MR. MALZAHN:  I think on the other point in the

11:36AM  25    Duval declaration, I don't -- you know, you can read the Duval
```

UNITED STATES DISTRICT COURT

1    declaration.  It doesn't say that submission of an article is

2    required by the FDA process.  And it's certainly not usual or

3    customary where there's a preliminary injunction in place that

4    prohibits a party from marketing and commercializing and

11:37AM  5    promoting the subject matter at issue.

6            And so regardless of what may be the usual case in

7    Mr. Duval's opinion, you know, it's not relevant here where the

8    parties are required to abide by a preliminary injunction.  And

9    I think you can review the declaration of Duval and it doesn't

11:37AM  10   go as far as defense counsel represents.

11           THE COURT:  Everything is subject to interpretation.

12           All right.  So could I ask you just to meet and

13   confer and if you can assist the Court by identifying which of

14   these additional motions are motions that the Court needs to

11:37AM  15   rule upon in order to issue a ruling on the summary judgment.

16   So I use words like "independent," "relate to," and those words

17   may be confusing.  But do the best that you can, and that will

18   be of assistance to the Court.

19           So you may step outside the courtroom.  As I said,

11:38AM  20   there are a couple of witness rooms there so that's a place

21   that you can get together.  And then come back and let me know

22   whether you're able to agree or not agree.

23           Thank you.

24           MR. BAKER:  Your Honor, should we send in the other

11:38AM  25   parties if they're in those rooms?

1     THE COURT: Oh, I'm sure they will come back when

2 they're ready. They had a lot of work to do.

3     MR. BAKER: Okay. All right.

4     THE COURT: Yes. So you're going to come back to

11:38AM 5 the Court once you had an opportunity to meet.

6     (Break taken.)

7     THE COURTROOM DEPUTY: Civil Case 20-3503,

8 International Medical Devices versus Robert Cornell.

9     THE COURT: All right. And we have counsel

11:45AM 10 standing. And just state your name for the record, and tell me

11 whether you are able to agree to something or not.

12     MR. BAI: Your Honor, Weining Bai for the

13 defendants. And we have conferred with counsel for plaintiffs

14 and we have agreed on the issue of which pending motions to

11:46AM 15 exclude experts need to be ruled on before the summary judgment

16 ruling and which ones do not. And I'm happy to report those

17 docket numbers to the Court.

18     THE COURT: Please do.

19     MR. BAI: So the only pending motion to exclude

11:46AM 20 expert testimony that should be ruled on before the summary

21 judgment motion is Docket 326. That is defendants' motion to

22 exclude the untimely supplemental expert reports of Dr. Carson

23 and Mr. Drewry. The remaining five motions to exclude experts

24 do not need to be ruled on before the summary judgment ruling.

11:46AM 25     And with that, Your Honor, would you like me to read

```
 1    those five into the record as well?

 2              THE COURT:  Please.

 3              MR. BAI:  The five that do not need to be ruled on

 4    before the summary judgment ruling are Docket Nos. 348 and 351.

 5    Those are filed by the plaintiffs.  And the other three that do

 6    not need to be ruled on are Docket Nos. 317, 320, and 323.  And

 7    those are filed by us, the defendants.

 8              THE COURT:  All right.  So I'm just looking at the

 9    motions that are listed actually on the calendar, just to make

10    sure, because it sounds like there are six that you're

11    reporting on now.

12              So I'm actually -- I think I'm counting eight.  So

13    what -- why don't I identify them.  Motion to strike the expert

14    report of Mr. Arst, A-r-s-t.  This was filed on November 2nd,

15    2021.  The next one is a motion to strike the expert report of

16    Drewry, D-r-e-w-r-y.  This was also filed on November 2nd.

17    Motion to strike the opinion of Dr. Carson with memoranda or

18    authorities in support thereof.  And this was filed on

19    November 2nd.  And the docket number is 320.  So you covered

20    that one.

21              The other ones that I -- other two that, I think,

22    that I read, Docket 317, you covered that one.  Docket 316, you

23    did not mention that one.  And let's see.  Then the motion to

24    strike plaintiffs' untimely supplemental expert reports filed

25    on November 2nd, 2021, it's Docket 325.  And that one you
```

**UNITED STATES DISTRICT COURT**

```
 1    specifically addressed -- or 326 maybe.  Yeah, 326.  Then the
 2    motion to strike expert report of Dr. Arst, A-r-s-t, filed
 3    11/2/21.  This is Docket 323.  And that one you did cover.
 4    Motion to withdraw docket entry -- and so I'm probably
 5    including that in the count -- and that's Docket 333.  So that
 6    was a motion to withdraw.  So that would be -- unless there was
 7    some objection to withdrawing that, then that would be pretty
 8    simple.  But I don't know if that relates to the summary
 9    judgment or not.
10            MR. BAI:  Yes, Your Honor.  The two that I did not
11    address as a pending motion are 316 and 333.  And 316 was
12    essentially an erroneously titled Motion to Exclude the
13    Opinions of Mr. Arst, which we sought to withdraw via
14    Docket 333.
15            THE COURT:  Oh.
16            MR. BAI:  And the plaintiffs did not oppose, so
17    those two are off the table.
18            The actual pending motion on Mr. Arst, the damages
19    expert's opinion that we filed, is 323, which I did mention as
20    a pending motion but, of course, one that does not need to be
21    ruled on in order to render a summary judgment ruling.
22            THE COURT:  Okay.  And then I have Docket 348.  This
23    is plaintiffs' motion to exclude certain opinions of the
24    rebuttal expert -- rebuttal damage expert to Dr. Hatch,
25    H-a-t-c-h.  So that one's not related to the summary judgment
```

The time stamps in the left margin: 11:49AM (line 5), 11:50AM (line 10), 11:50AM (line 15), 11:50AM (line 20), 11:51AM (line 25).

1    or is related to the summary judgment?

2            MR. BAI:  Is not.

3            THE COURT:  Not.  Okay.

4            And then the last one, it's plaintiffs' *Daubert*

11:51AM  5   motion to exclude the testimony of defendants' expert.  This is

6    Docket 351, and that one you did cover.

7            MR. BAI:  Correct.  Not related.

8            THE COURT:  Okay.  So I think I have it.  And unless

9    plaintiffs disagree, then the Court has guidance now as to what

11:51AM  10  to do with these various motions.

11           So the Court will still rule on the motions, but

12   it's helpful to know whether they are related or not related.

13           So you won't be surprised, we changed law clerks --

14   or I changed law clerks after this case was filed.  So just

11:52AM  15  because one law clerk finished the year's term, another law

16   clerk came on and then trying to put all of this together.  So

17   this is helpful for us as we go about the job of getting a

18   ruling to you.

19           Thank you.

11:52AM  20          Anything else to be placed on the record or any

21   inquiry to be made?

22           MR. BAI:  Not from us, Your Honor.

23           THE COURT:  No.

24           Plaintiffs?

11:52AM  25          MR. BAKER:  Nothing further from plaintiffs,

1    Your Honor.  Thank you.

2              THE COURT:  All right.  We look forward to seeing

3    you at the next hearing.  And hopefully we'll get you orders on

4    the summary judgment motions within that three-week period that

11:52AM    5    I addressed.

6              Thank you.

7              THE COURTROOM DEPUTY:  Please rise.  This court is

8    in recess.

9              (Proceedings concluded at 11:52 a.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          **CERTIFICATE OF OFFICIAL REPORTER**

2

3    COUNTY OF LOS ANGELES    )
                              )
4    STATE OF CALIFORNIA      )

5

6          I, MYRA L. PONCE, FEDERAL OFFICIAL REALTIME COURT

7    REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE

8    CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT

9    TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE FOREGOING

10   IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY

11   REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT

12   THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE

13   REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

14

15

16

17          DATED THIS 13TH DAY OF JUNE, 2022.

18

19

20                    /S/ MYRA L. PONCE
                 _____
21               MYRA L. PONCE, CSR NO. 11544, CRR, RDR
                      FEDERAL OFFICIAL COURT REPORTER
22

23

24

25

**UNITED STATES DISTRICT COURT**