# Trial Exhibit 1004

IN THE UNITED STATES PATENT AND TRADE MARK OFFICE

| | |
|---|---|
| First Inventor: | Dr. Robert Cornell |
| Serial Number: | 16/238,792 |
| Filing Date: | January 3, 2019 |
| Examiner/Group Art Unit | Lacyk, John P. / 3791 |
| Conf. No. | 1169 |
| Title: | PENILE IMPLANTS THAT FACILITATE TISSUE EXPANSION |

## RESPONSE TO MARCH 15, 2019 OFFICE ACTION AND INTERVIEW SUMMARY

Applicant submits the following response to the March 15, 2019 Office Action.

**Amendments to the Specification** begin on page 2.

**Amendments to the Claims** begin on page 3.

**Remarks** begin on page 5.

HW_US:73843952.1

U.S.D.C. CENTRAL DISTRICT OF CALIFORNIA
CASE NO. 2:20-cv-03503-CBM (RAOx)
International Medical Devices, Inc., et al.,
VS. Robert Cornell, MD, an individual; et al.,
JOINT EXHIBIT 1004
DATE _____ IDEN.
DATE _____ EVID.
BY _____
Deputy Clerk

AUGM00001067

J1004-001

## AMENDMENTS TO THE SPECIFICATION

Please replace paragraph [0047] with the following paragraph:

[0047]     Figures 1-7 illustrate an embodiment of a penile implant 100. Figure 1 illustrates a perspective view of an embodiment of the penile implant 100. Figures 2 and 7 illustrate side and cross section views of the penile implant 100, respectively. The implant 100 has a cylindrical body 110 having a longitudinal axis and of a selected longitudinal length to be aligned with the long axis of the penis. The cylindrical body 110 has an outer cylindrical surface 112 and a smaller inner cylindrical surface 114. Figures 3 and 4 illustrate cross-section views perpendicular to the longitudinal axis of the cylindrical body 110. The cylindrical body 110 has a wall thickness that tapers circumferentially in opposite directions beginning from a maximum thickness along a dorsal midline 120 to a minimum thickness along ventral edges 122 that form a ventral opening 124. The ventral edges 122 are illustrated as scalloped, however they may also be straight edges. <u>Reference numeral 200 in Figure 7 cross-section refers to a few representative internal pockets disposed below the outer cylindrical surface 112 of the cylindrical body 110.</u>

## AMENDMENTS TO THE CLAIMS

Please replace the current claim set with the following set of claims:

1.  (Currently amended) A penile implant comprising:

    a body having outer and inner surfaces and a longitudinal axis and of a selected longitudinal length to be aligned with the long axis of a penis, wherein the body comprises:

    a cross-section perpendicular to the longitudinal axis of the body having a wall thickness that tapers circumferentially in opposite directions beginning from a maximum thickness along a dorsal midline to a minimum thickness along ventral edges that form a ventral opening;

    said penile implant comprises one or more biocompatible materials selected or configured to facilitate tissue expansion <u>wherein said one or more biocompatible materials comprise internal pockets configured such that a measured property of hardness differs from the proximal end of the implant to the distal end of the implant.</u>

2.  (original) The penile implant of Claim 1 wherein said one or more biocompatible materials are configured to comprise one or more internal pockets that vary in one or more of the following: geometry, size, depth, or location.

3.  (original) The penile implant of Claim 2 wherein the said one or more internal pockets are configured to result in one or more of the following: (1) reduce rigidity of at least a portion of the implant, (2) reduce the total weight of the implant, (3) increase elasticity of at least a portion of the implant, (4) increase extensibility of at least a portion of the implant, or (5) increase compressibility of at least a portion of the implant.

4.  (original) The penile implant of Claim 2 wherein said internal pockets comprise a honeycomb design.

5.  (original) The penile implant of Claim 1 wherein said implant comprises one or more biocompatible materials selected or configured such that a measured property at a first location

on said penile implant is different than said same measured property at a second location on said implant.

6. (original) The penile implant of Claim 5 wherein said measured property comprises one or more of the following properties: (1) hardness; (2) tensile strength; (3) tear strength; (4) compressive strength; and (5) elongation.

7. (original) The penile implant of Claim 6 wherein the measured property of hardness is different at a first location on said penile implant from a second location on said implant.

8. (original) The penile implant of Claim 7 wherein the measured property of hardness differs from the proximal end of the implant to the distal end of the implant.

9. (original) The penile implant of Claim 2 wherein the said one or more internal pockets are configured to result in a change of one or more properties from the proximal end of the implant to the distal end of the implant.

10. (original) The penile implant of Claim 3 wherein the said one or more internal pockets are configured to result in a change in rigidity from the proximal end of the implant to the distal end of the implant.

11. (original) The penile implant of Claim 1 comprising one or more tabs configured to suture to a body.

12. (original) The penile implant of Claim 11 wherein the tabs are configured at both distal and proximal ends to suture Buck's fascia and receive tissue ingrowth.

13. (Currently amended) The penile implant of Claim 11 wherein the one or more tabs are <u>attached to the body of the implant.</u> ~~embedded tabs~~ ~~that protrude beyond a proximal end of the body and beyond a distal end of the body.~~

14. (original) The penile implant of Claim 11 wherein the one or more tabs comprise a mesh material.

15. (original) The penile implant of Claim 12, wherein the tabs are configured to employ absorbable sutures.

16. (original) The penile implant of claim 1, further comprising an antibiotic or antibacterial agent.

17. (cancelled).

## INTERVIEW SUMMARY AND REMARKS

Applicant appreciates the courtesies extended by the Examiner during the telephonic interview in which Applicant's attorney Gregory Porter and inventors Dr. Cornell and David Nichols participated. The proposed amendment to independent Claim 1 was discussed in relation to the cited references. Examiner Lacyk confirmed that the amendment sufficiently distinguished the references and asked that the Applicant amend the drawings and specification to label the "internal pockets" feature of amended Claim 1. Applicant has done so with the instant replacement drawing and specification amendment.

### I. As Agreed During the Interview, Amended Independent Claim 1 Overcomes the Rejections

Independent Claim 1 is amended to state "wherein said one or more biocompatible materials comprise internal pockets configured such that a measured property of hardness differs from the proximal end of the implant to the distal end of the implant." Support for the amendment is found in at least dependent claim 8 and throughout the specification.

The proposed amendment would even further distinguish the instant claims from Elist which does not teach or suggest such a configuration. The instantly claimed pockets are "internal pockets", i.e., voids within the interior of the implant as discussed in paragraph [0031] and such as the "honeycomb" design in dependent Claim 4. The "internal pockets" are not "grooves or perforations" like Subrini which are exterior. Instead, the claimed "internal pockets" may be full-thickness septations that may only be covered along the dorsal implant surface, permitting structural compression and elasticity of the device during normal physiologic activity while maintaining structural integrity that permits both elongation and girth enhancement of the

flaccid penis.[1] This novel characteristic of the implant permits natural deformation of the flaccid penis and natural expansion of the penis as an erection is achieved. Thus, the Elist and Subrini suggested combination does not yield the claimed invention.

There are many advantages of the present invention. For example, by using the claimed "internal pockets" the hardness, as well as other properties, of the device at various locations may be varied without requiring changes in material, changes in geometry, or both. In this manner, as described in paragraph [0030], the implant's hardness and other properties may be adjusted and/or customized over the dimensions of the implant to more accurately simulate normal penile tissue characteristics in both the flaccid and erect states while augmenting the penis. Thus, unlike Elist and Subrini the claimed implant may be designed to deform during flaccid and erect states. Applicant requests withdrawal of the prior art rejections.

## II. The Drawing and Specification Have Been Amended to Moot the Drawing Objection Regarding "Internal Pockets" Not Being Labelled in the Drawing

The drawings were objected to as not labelling the "internal pockets." Please replace Figure 7 with the one shown on the attached replacement sheet filed herewith which adds reference numeral 200 to label a few representative internal pockets. Paragraph [0047] of the specification has been amended to state: "Reference numeral 200 in Figure 7 cross-section refers to a few representative internal pockets disposed below the outer cylindrical surface 112 of the cylindrical body 110." The replacement drawing and specification amendment moots the objection.

---

[1] In addition, amended Claim 1 also requires that "a measured property of hardness differs from the proximal end of the implant to the distal end of the implant", i.e., the internal pockets are configured such that a hardness measured at a point near the proximal end differs from a hardness measured at a point near the distal end.

AUGM00001065

**J1004-007**

### III. The Amendment to Claim 13 and Cancellation of Claim 17 Moot the Other Drawing Objections

The drawings were further objected to because embodiments of Claims 13 and 17 were not shown. Claim 17 referring to "knobs, ribs, etc." has been cancelled mooting the objection.

Claim 13 has been amended to state "The penile implant of Claim 11 wherein the one or more tabs are <u>attached to the body of the implant</u>." Tabs attached to the implant body are shown at, for example, Figure 7 as reference numeral 128. Support for the Claim 13 amendment is found at, for example, paragraph 45 stating "The mesh tabs may be formed integrally with the body, or embedded within the body, or <u>attached to it</u>, or attached between multiple layers of the body, or attached to the body by other methods of attachment." (emphasis added).

### IV. Conclusion

Applicant respectfully requests a notice of allowance for the pending claims.

Applicant does not believe any fee is required for this filing. However, if a fee is necessary to complete this submission, the Commissioner is authorized to charge any necessary fee to the Hunton Andrews Kurth LLP Deposit Account No. 50-2849 in order to complete this submission (referencing matter 098406.0266923).

Dated: April 30, 2019

Respectfully submitted,

/Gregory L. Porter/
Gregory L. Porter
Regis. No. 40131
HUNTON ANDREWS KURTH LLP
600 Travis St.
Suite 4200
Houston, Texas 77002
Tel: (713) 220-4621
Fax: (713) 238-4285
Pat-tmk@andrewskurth.com

ATTORNEYS FOR APPLICANT

AUGM00001066

**J1004-008**