O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| International Medical Devices, et al,<br><br>    Plaintiffs,<br>v.<br><br>Robert Cornell, MD, an individual, et al,<br><br>    Defendants. | Case No.: 2:20-cv-03503-CBM (RAOx)<br><br>**ORDER RE: DEFENDANTS' MOTION FOR AMENDED OR ADDITIONAL FINDINGS, AND TO ALTER OR AMEND** |

The matter before the Court is Motion for Amended or Additional Findings, and to Alter or Amend, under Federal Rules of Civil Procedure 52(a) and 59(e). (Dkt. No. 715 ("Motion").)

## I.   BACKGROUND

This is a trade secrets case filed by Plaintiffs International Medical Devices, Inc., Menova International, Inc., and James Elist, MD against multiple Defendants.[1] (Dkt. No. 578.) The parties are familiar with the factual and procedural background of the case; therefore, the Court does not repeat the relevant facts herein. On June 13, 2024, Defendants filed the instant Motion, and on June 24, 2024, Defendants filed an amended version of the Motion. (Dkt. Nos. 712, 715.)

## II.   STATEMENT OF THE LAW

Federal Rule of Civil Procedure 52(a) states that "[i]n an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court."

Federal Rule of Civil Procedure 59(e) states that a "motion to alter or amend a judgment must be filed no later than 28 days after the entry of judgment." "To alter or amend the judgment requires a substantive change of mind by the court." *Id.* (internal quotations, ellipses, and brackets omitted). *United States ex rel. Hoggett v. Univ. of Phoenix*, 863 F.3d 1105, 1108 (9th Cir. 2017) (internal quotations and brackets omitted). Thus, "amending a judgment after its entry remains an extraordinary remedy which should be used sparingly." *Allstate Ins. Co.*

---

[1] Defendants are Robert Cornell, MD; Augmenta, LLC; Robert J. Cornell M.D., P.A.; Jonathan Clavell Hernandez, MD; Clavell Urology, PLLC; OAM LLC; Cornell Cosmetic Urology, LLC; David Louis Nichols; Huck Medical Technologies, Inc.; Hans Mische; Hans Mische, LLC; Run Wang, MD; RW Global Men's Health Consulting Services, PLLC; Richard B. Finger; and Lata Lignum LLC. (Dkt. No. 578 at 4.)

*v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011). "In general, there are four basic grounds upon which a Rule 59(e) motion may be granted: (1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law." *Id*. "A court considering a Rule 59(e) motion is not limited merely to these four situations, however." *Id*. "Since specific grounds for a motion to amend or alter are not listed in the rule, the district court enjoys considerable discretion in granting or denying the motion." *Id*.

## III. DISCUSSION

### A. Failure to Comply with Rule 52(a)

Defendants argue that the Court "failed to provide the necessary findings of fact to support" the compensatory and exemplary damages and permanent injunction it ordered. (Mot. at 6.)

In the Court's Order re Plaintiffs' Post-Trial Motion for Award, the Court included a section titled "The Court's Findings re Reasonably Royalty" which set forth the facts upon which the Court found a reasonably royalty of $5,772,044. (Dkt. No. 698 at 12–13 (citing Trial Ex. 6-020; Trial Tr. 1190:21-1191:8; Trial Exs. 29, 78).) Based on these facts, the Court found that "the nature and extent of Defendants' use of IMD's trade secrets weighs in favor of a reasonable royalty higher than that proposed by Dr. Hatch [Defendants' expert witness]," and adopted Mr. Arst's approach to finding reasonable royalties instead. (*Id*.) The Court also explained its reasoning in calculating the royalty award using Mr. Arst's calculations. (*Id*. at 13.) Finally, the Court found "the conduct in which the Defendants engaged amounted to a willful and malicious misappropriation," which was the basis for the Court's award of exemplary damages. *See* Cal. Civ. Code § 3426.3(c).

3

Thus, the Court properly analyzed and made factual findings regarding the nature of the misconduct and the amount of compensatory damages. The Court did not make any findings as to Defendants' financial condition, but, as Plaintiffs explain, this "was not considered by the Court because the Parties stipulated at the October 25, 2023 post-trial hearing that neither side would offer evidence of Defendants' net worth, and that Defendants would not challenge an exemplary damages award for such lack of evidence." (Opp. at 24.) The transcript of the October 25, 2023 evidentiary hearing confirms this:

> The parties agree that neither side will offer or be required to offer any evidence of net worth for Dr. Robert Cornell, Richard Finger, Robert J. Cornell, M.D., PA, Cornell Cosmetic Urology, LLC, Augmenta, LLC, or Augmenta Investors, LLC. Defendants agree that, should the Court make an award of any exemplary damages against Dr. Robert Cornell, Richard Finger, Robert J. Cornell, M.D., PA, Cornell Cosmetic Urology, LLC, Augmenta, LLC, or Augmenta Investors, LLC, defendants will not challenge such finding on the basis that plaintiffs did not adduce any evidence of net worth for Dr. Robert Cornell, Richard Finger, Robert J. Cornell, M.D., PA, Cornell Cosmetics Urology, LLC, Augmenta, LLC, or Augmenta Investors, LLC. Defendants further agree not to challenge on appeal any such exemplary damages award on the basis that there is no evidence of net worth.

(Dkt. No. 733-3 ("Evid. Hearing Tr.") at 247:14-248:8.)

The Court's Order re Plaintiffs' Post-Trial Motion for Award sufficiently details how the Court calculated the award such that an appellate court can "adequately resolve objections raised regarding validity of an award." *Simeonoff v. Hiner*, 249 F.3d 883, 891–92 (9th Cir. 2001) (rejecting appellant's Rule 52(a) challenge because his arguments "are merely observations that the district court's award for past and future economic damages are lump sum awards" and "[l]ump sum damage awards are not per se insufficient under Rule 52(a)"). Accordingly, the Court's ruling complied with Rule 52(a).

### B. Compensatory Damages

Defendants contend that the Court "offered an inadequate reasoning for" adopting Plaintiffs' expert Mr. Arst's model for calculating reasonable royalties over Defendants' expert Dr. Hatch's model. (Mot. at 9.) Defendants contend that the Court should "reconsider its findings regarding the award of compensatory damages" because '[t]here are several critical deficiencies in Mr. Arst's opinion." (*Id.*) Defendants essentially attempt to re-litigate issues regarding the validity of Arst's expert opinion that the Court has already ruled on multiple times.[2] These arguments are no more convincing on the third try.[3] The fact that there were no sales of the Augmenta product and the preliminary injunction in this case barred Defendants from profiting off Agumenta does not preclude an award of reasonable royalties.[4] *See Atl. Inertial Sys. Inc. v. Condor Pac. Indus. of California, Inc.*, 2015 WL 3825318, at *5 (C.D. Cal. June 18, 2015) ("section 3426.3(b) permits a royalty award even where a defendant was not found as a matter of fact to have profited

---

[2] (*See* Dkt. Nos. 539 (finding Arst's reliance on statements by Dr. Elist and Mr. Elist sufficient, his apportionment of value attributable to the trade secrets proper, and his reliance on the October 2018 projection sufficient); 698 (noting Dr. Hatch's criticisms of Arst's model and finding that the "nature and extent of Defendants' use of IMD's trade secrets weighs in favor" of adopting Arst's model rather than Hatch's).)

[3] Defendants' cites to *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 69 (Fed. Cir. 2012) and *LinkCo, Inc. v. Fujitsu Ltd*, 232 F. Supp. 2d 182, 188–89 (S.D.N.Y. 2002) were already addressed by the Court in an earlier order (Dkt. No. 539 at 2) and are inapposite. Defendants' cite to *Carborundum Co. v. Molten Metal Equip. Innovations, Inc.*, 72 F.3d 872, 882 (Fed. Cir. 1995) does not support its position that IMD can only seek damages for "past sales" and not "future sales"—the *Carborundum* court noted that because Metaullics "did not attempt to obtain damages for *future* repair parts sales" because of an injunction, Metaullics "was not fully compensated for the infringement because the damages award did not include future lost sales of repair parts for which Metaullics had established entitlement."

[4] *Sinclair Ref. Co. v. Jenkins Petroleum Process Co.*, does not state what Defendants contend it states—nothing in the case holds that use of projected sales in determining royalties is improper. 289 U.S. 689, 697 (1933).

5

from his misappropriation," "allowing misappropriators to gamble with other people's trade secrets would undermine 'important standards of commercial ethics,'" and "even if a defendant does not profit from a misappropriated trade secret, he may nonetheless achieve non-pecuniary benefits from the secret") (discussing *Ajaxo Inc. v. E*Trade Fin. Corp.*, 187 Cal. App. 4th 1295 (2010)).

Defendants provide no evidence that there has been a "manifest error of law or fact upon which the judgment rests," "newly discovered or previously unavailable evidence," a "manifest injustice," or an "intervening change in controlling law" that would warrant a "substantive change of mind by the Court" on the compensatory damages awarded. *Allstate*, 634 F.3d at 1111. Accordingly, amendment of findings on this basis is unwarranted.

## C. Exemplary Damages

Defendants contend that the Court erred in awarding exemplary damages for trade secret misappropriation because (1) Plaintiffs "waived any right to recover exemplary damages by omitting it from the Final Pretrial Order"; (2) whether misappropriation was "willful and malicious" is an issue for the jury, not the Court; (3) exemplary damages requires a finding that a "particular defendant" engaged in willful and malicious appropriation; (4) a finding of willful misappropriation only permits the Court to exercise discretion in awarding damages and does not "automatically lead[]" to exemplary damages; and (5) joint and several liability is inappropriate. (Mot. a 12–18.) Each of these arguments is addressed in turn below.

### 1. Waiver of Right to Exemplary Damages

Defendants contend that Plaintiffs waived their right to recover exemplary damages because they omitted it from the Final Pretrial Order, and that because the Final Pretrial Order "supersedes the pleadings and governs the course of the trial of this cause," Plaintiffs forfeited any claim for exemplary damages. (Mot. at 12 (brackets omitted).) This argument is not credible given the parties' stipulation during the evidentiary hearing, in which Defendants made no mention that they

believed exemplary damages were waived altogether by way of the Final Pretrial Conference Order and in fact acknowledged that the Court may make an award of exemplary damages against Defendants.[5] (*See* Evid. Hearing Tr. at 247:11-248:8 ("Defendants agree that, should the Court make an award of any exemplary damages against [Defendants] . . .").)  Therefore, this is not a basis for amending the Court's findings on exemplary damages.

### 2. *Willful and Malicious Determination*

Defendants contend that Plaintiffs also forfeited exemplary damages "by failing to secure (or even request) a jury finding that any misappropriation was willful and malicious" because this question is "a triable issue by a jury in federal court." (Mot. at 13.) Defendants contend that under federal patent law (section 284), there is a right to a jury trial on the question of willfulness—therefore, there is also a right to jury trial on the question of willful and malicious misappropriation under the CUTSA, and the Court "violate[d] Defendants' rights to a jury trial under the Seventh Amendment" by deciding the issue itself. (*Id.*) Defendants contend that Ninth Circuit precedent is not controlling because "[t]his case will be decided on appeal by the Federal Circuit," which holds that the willfulness question "must

---

[5] The cases cited by Defendants are inapposite, and none held that exemplary damages are forfeited when not included in the final pretrial conference order. *See Rockwell Int'l*, 549 U.S. at 474 (discussing final pretrial order precluding claims); *S. California Retail Clerks Union & Food Emps. Joint Pension Tr. Fund v. Bjorklund*, 728 F.2d 1262, 1264 (9th Cir. 1984) (finding defendant failed to preserve "the issue of whether Warren was acting as an agent of the plaintiff Trust Funds"); *Eagle v. American Telephone and Telegraph Co.*, 769 F.2d 541, 548 (9th Cir. 1985) (finding pretrial conference order precluded plaintiff from raising a new *theory* of damages); *Lisle Corp. v. A.J. Mfg. Co.*, 398 F.3d 1306, 1317 (Fed. Cir. 2005) (finding defendant waived affirmative defenses that were not included in the final pretrial order); *Arriaga v. Logix Fed. Credit Union*, 2022 WL 3098495 (C.D. Cal. Apr. 22, 2022) (same); *Asfall v. Los Angeles Unified Sch. Dist.*, 2020 WL 2951920 (C.D. Cal. Feb. 11, 2020) (finding it would prejudice defendant to allow plaintiff to obtain injunctive relief when defendant "was not on notice that the adequacy of its Title IX training program would be at issue").

7

be decided by the jury." (*Id*. at 8.)

Defendants' argument is belied by the parties' stipulation prior to trial that the Court, not the jury, would consider harm and appropriate damages for trade secret liability (*see* Dkt. No. 599), and the parties' stipulation at the October 25, 2023 evidentiary hearing that acknowledged that the Court may award exemplary damages. If Defendants wished for the jury to determine whether conduct was willful and malicious, they could have raised the issue before the Court excused the jury. They did not—consequently, the issue was not preserved for the jury.

In any case, Ninth Circuit law appears to allow district courts to determine whether misappropriation was willful and malicious. The CUTSA states that "[i]f willful and malicious misappropriation exists, the court may award exemplary damages in an amount not exceeding twice any award made under subdivision (a) or (b)." Cal. Civ. Code § 3426.3(c). CACI 4411 commentary states that "[n]o reported California state court case has addressed whether the jury or the court should decide whether any misappropriation was "willful and malicious." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp*. involved the Montana Unfair Trade Practices Act, not the CUTSA—but the MUTSA contains the same comment in the CUTSA Defendants rely on to argue that the Court should find "willful and malicious misappropriation" is a question for the jury. 259 F.3d 1101, 1112 (9th Cir. 2001) (noting MUTSA's official commentary states the exemplary damages provision "follows federal patent law in leaving discretionary trebling to the judge even though there may be a jury"). Despite this commentary, the Ninth Circuit still "reverse[d] the district court's refusal to consider plaintiff's motion for exemplary damages and attorney's fees" and remanded to "allow the district court to make an independent judgment about whether [the] misappropriation was 'willful and malicious.'" *Id*.

Defendants' argument that this issue is governed by Federal Circuit law is incorrect. "The Federal Circuit applies its own law with respect to issues of

8

substantive patent law and certain procedural issues pertaining to patent law, but applies the law of our sister circuits to non-patent issues." *Rsch. Corp. Techs. v. Microsoft Corp.*, 536 F.3d 1247, 1255 (Fed. Cir. 2008). In *Uroplasty, Inc. v. Advanced Uroscience, Inc.*, 239 F.3d 1277 (Fed. Cir. 2001), the Federal Circuit held that the plaintiff's "state law trade-secrets claim" was "not governed by federal patent law" because although the relevant "patent may be evidence in support of Uroplasty's allegations, [] the mere presence of the patent does not create a substantial issue of patent law." *Id*. at 1280; *see also Intellisoft, Ltd. v. Acer Am. Corp.*, 955 F.3d 927, 933 (Fed. Cir. 2020) ("We have made clear that a plaintiff's reliance on a patent as evidence to support its state law claims does not necessarily require resolution of a substantial patent question"). Thus, Ninth Circuit law applies here.[6]

Therefore, amendment of the findings on this basis is unwarranted.

3. *Willfulness of Each Defendant*

Defendants contend that the "CUTSA allows for exemplary damages only against a particular defendant that engaged in willful and malicious appropriation," and that Plaintiffs needed but failed to "present evidence of . . . willful and malicious appropriation for each defendant separately for each trade secret." (Mot. at 15.) But nothing in the CUTSA statutory provision states that there must be a finding of willful and malicious misappropriation as to each Defendant separately before imposing exemplary damages. *See* Cal. Civ. Code § 3426.3(c). The only case Defendants cite in support is an out-of-circuit case where the district court found that certain defendants' conduct did not "evince willfulness or malice" because "their motives were purely competitive, in the interest of acquiring a valuable new customer." *Advanced Fluid Sys., Inc. v. Huber*, 295 F. Supp. 3d 467, 494 (M.D. Pa. 2018).

---

[6] Defendants' cases from the Federal Circuit involved federal patent claims, not state trade secrets claims.

Under CACI 4411, "willful" conduct is where the defendant "acted with a purpose or willingness to commit the act or engage in the conduct in question, and the conduct was not reasonable under the circumstances at the time and was not undertaken in good faith." "Malicious" conduct is where a defendant "acted with an intent to cause injury, or that [defendant's] conduct was despicable and was done with a willful and knowing disregard for the rights of others." CACI 4411; *see also Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103–04 (2016) ("[t]he sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant or . . . characteristic of a pirate."). Malice may be proven either expressly by direct evidence probative of the existence of ill-will, or by implication from indirect evidence. *Neal v. Farmers Ins. Exch.*, 21 Cal.3d 910, 923 n.6 (1978); *Ajaxo Inc. v. E*Trade Grp., Inc.*, 135 Cal. App. 4th 21, 66–67 (2005).

The Court's Order Granting the Motion for Award cites to evidence supporting its finding of willful and malicious misappropriation as to each Defendant. (*See* Dkt. No. 698 at 13–14 (citing Trial Tr. 1254:1-25, 1061:20-1065:2; Trial Exs. 6, 14, 17, 206).) The direct and indirect evidence cited by Plaintiffs also support a finding of willfulness.[7] Based on this record, all Defendants (1) knew that

---

[7] (*See* Trial Tr. at 354:11-357:9, 1088:19-1097:9, 1605:24-1610:12, 1773:16-1779:25, Exs. 123, 308 (testimony and exhibits re Cornell's attendance at Penuma training session, taking notes "to document his theft" of trade secrets, and signing an NDA); 1254:1-25 (testimony regarding Cornell's correspondence with Mische); 1090:18-1091:20, 1100:2-25, Ex. 123 (testimony and exhibits regarding HMT's involvement with Augmenta); 1192:13-1195:16; Exs. 24, 25, 511, 531 (testimony and exhibits regarding Cornell's personal medical practice advertising and using Penuma trademark and maintaining a patient waiting list based on inquiries received from advertising); 1060:18-20, 1040:24-1042:7, 1043:19-22, 1048:21-1049:1, Exs. 206, 324 (testimony and exhibits related to Finger's involvement in Augmenta Investors and that Finger knew Cornell's Penuma training was covered by an NDA); Ex. 280 (email from Finger to Wang noting that Wang provided "invaluable design input" to Augmenta); Ex. 258 (flow chart of Augmenta Investors LLC organization).)

10

Cornell learned certain information during the Penuma training, and (2) aimed to introduce a competing product into the market. The evidence also indirectly suggests that all Defendants knew the Penuma training was part of how Cornell developed the technology for Augmenta. Therefore, the Court's finding of willful and malicious misappropriation was supported by evidence, and amendment of the findings on this ground is unwarranted.

### 4. Discretion in Awarding Damages

Defendants contend that the Court "erroneously impl[ied] that willful and malicious misappropriation automatically leads to exemplary damages of twice the compensatory damages." (Mot. at 16.) Defendants' argument is unpersuasive for the reasons addressed above. The Court's Order addressed the nature and extent of the misconduct and the amount of compensatory damages. The third factor was not addressed because the parties stipulated that they would not submit evidence related to Defendants' net worth. Further, nothing in the Order indicates that the Court "automatically" applied exemplary damages after finding willful and malicious misappropriation. Therefore, amendment of the findings on this ground is unwarranted.

### 5. Joint and Several Liability

Finally, Defendants argue that joint and several liability for exemplary damages is inappropriate and "has no basis in CUTSA," and that exemplary damages "must be tailored to the specific situation of each individual actor." (Mot. at 18.) Nothing in the text of the CUTSA provision supports this position, and the statute does not prohibit the Court from imposing joint and several liability. Defendants' cited cases do not involve the CUTSA or trade secret misappropriation, but rather stand for the general proposition that punitive damages must be tied to the egregiousness of a defendant's conduct.[8] In contrast, *Brocade Communications*

---

[8] *See Magallanes v. Superior Ct.*, 167 Cal. App. 3d 878, 888 (Ct. App. 1985) (noting the "measure of that malice or oppression requires the determination of the state of

11

*Systems., Inc. V. A10 Networks, Inc.* addressed whether joint and several liability is appropriate in the context of CUTSA and concluded that it is. 873 F. Supp. 2d 1192 (N.D. Cal. 2012) *on reconsideration in part*, 2012 WL 12925716 (N.D. Cal. July 8, 2012). Like here, the individual defendants in *Brocade* argued that "Brocade had not established damages as against each of them to support a claim of trade secret misappropriation." 873 F. Supp. 2d at 1217. The district court concluded that "the rule allowing joint and several liability in trade secret misappropriation cases likely survived the adoption of CUTSA." *Id*. at 1218 (noting that "[c]ommentators on trade secret law also suggest that, in general, liability for misappropriation claims is joint and several"). Defendants do not cite any authority holding that liability for exemplary damages should be treated differently than compensatory damages. Therefore, amendment of the findings on this basis is unwarranted.

**D.     Permanent Injunction**

"A district court has considerable discretion in fashioning suitable relief and defining the terms of an injunction. Appellate review of those terms 'is correspondingly narrow.'" *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991). California Civil Code section 3426.2(a) states that "[u]pon application to the court, an injunction shall be terminated when the trade secret has ceased to exist, but the injunction may be continued for an additional period of time in order to eliminate commercial advantage that otherwise would be derived from

---

mind of the particular defendant while committing the alleged wrongful act"); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 582 (1996) (holding a $2 million punitive damages award was "grossly excessive" when considering "the degree of reprehensibility of the nondisclosure," that $2 million was "500 times the amount of [] actual harm as determined by the jury," and "the difference between this remedy and the civil penalties authorized or imposed in comparable cases"); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003) (reversing judgment of Utah Supreme Court where "most relevant civil sanction under Utah state law for the wrong done" was a $10,000 fine, "an amount dwarfed by the $145 million punitive damages award").

the misappropriation." Therefore, the Court had discretion to enter an injunction in order to eliminate the commercial advantage Defendants would otherwise derive from their misappropriation. The Court's Order Granting Permanent Injunction stated that the five-year limit is "the period of time during which IMD could have prohibited Dr. Cornell from using the trade secrets based on the duration of the [NDA] . . . signed on March 30, 2018." (Dkt. No. 699 at 6.) This is actually shorter than "it would have taken [the defendant], either by reverse engineering or by independent development, to develop [the product] legitimately without use of [plaintiff's] trade secrets." *Lamb-Weston*, 941 F.2d at 974. The NDA would only have prevented Defendants from using the trade secrets to develop Augmenta for five years; instead, Cornell began developing the product only weeks after the Penuma training. Therefore, the record reflects that the head start Defendants obtained was about five years.

Defendants raise the same arguments they raised in Defendants' Motion to Dissolve Paragraphs 1a-1b of Preliminary Injunction. (*See* Dkt. No. 666.) The Court already considered and found these arguments unpersuasive. (*See* Dkt. No. 699 (granting permanent injunction and denying Defendants' Motion to Dissolve).) Defendants provide no new arguments that warrant a different conclusion. Therefore, the Court finds that amendment of the permanent injunction is unwarranted.

## IV. CONCLUSION

Accordingly, the Court **DENIES** Defendants' Motion.

**IT IS SO ORDERED.**

DATED: March 14, 2025.

CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE